**GREENWOOD v. UNITED STATES.**

Civ. A. No. 1773.

United States District Court
D. Kentucky, at Louisville.

June 8, 1951.

Doolan, Helm, Stites & Wood, Louisville, Ky., Coolidge, Becker, Wall & Wood, Dayton, Ohio for plaintiff.

David C. Walls, U. S. Atty., Norris W. Reigler, Asst. U. S. Atty., Louisville, Ky., for defendant.

SHELBOURNE, Chief Judge.

This action was filed November 25, 1949, to recover for the estate of decedent Floyd L. Greenwood, $100,000 damages by reason of his wrongful death.

Jurisdiction is claimed under the Federal Tort Claims Act, Title 28 U.S.C.A. § 2671 et seq.

The taxicab in which decedent was riding came in collision with a truck owned by the United States, and then being operated by Carl L. Rayno, a private in the United States Army. The collision occurred October 4, 1949 and Greenwood died the next day, October 5, 1949, and plaintiff claims that at the time, the truck was being driven by Rayno within the scope of his employment and that the collision was the result of negligence of the driver.

The case was tried to the Court, as required by the Act, November 30, 1950.

From the stipulation, response to the request for admissions and the evidence adduced by the parties at the trial, the Court makes the following

### Findings of Fact

1. October 4, 1949, Carl L. Rayno, a private in the United States Army, stationed at Fort Knox, Kentucky, was working under the supervision and control of Frank E. Goodman, a civilian employee of the United States at the office of the Post Engineer.

Between twelve o'clock noon and two o'clock P.M., Private Rayno, driving the U. S. Army truck westwardly, approximately two miles west of Tiptop, Kentucky, on U. S. Highway 60, at a point described as the base of Gray Hampton Hill, was proceeding at an excessive rate of speed around a curve to the driver's right when his truck struck a taxicab proceeding eastwardly, being driven by James E. Hook, Cloverport, Kentucky, in which Floyd L. Greenwood was a passenger.

The driver of the taxicab, in an effort to avoid the collision, drove his cab to his right of the center of the highway so that the wheels on the right-hand side of the cab were entirely off the surface and practically to the edge of the berm of the highway. The Army truck was being operated at such a rate of speed that it skidded on the surface of the highway, made wet by a rain then falling, and proceeded over the center line of the highway and the impact of the truck striking the taxicab drove or knocked the latter through the guard rails along the south side of the highway.

November 4 and 5, Private Rayno was tried by a Court Martial of the United States Army at Fort Knox, Kentucky, and by that Court convicted of a violation of the 96th Article of War, 10 U.S.C.A. § 1568, "In that Private Rayno did at Grayhampton, Kentucky, on or about 1415 hours, Oct. 4, 1949, unlawfully kill F. L. Greenwood by driving a motor vehicle, to-wit, a 2½ ton 6x6 GMC Dump Truck W-4853416 against the said Greenwood in a negligent manner."

Private Rayno had admittedly been drinking whiskey and beer on the night preceding the day of the accident and on the morning of the day of the accident he had drunk a quantity of beer, which he described as "two bottles" when he testified at his Court Martial proceeding and as "four or five bottles" when his deposition was later taken in this action.

At approximately 12:45, after Private Rayno had eaten his lunch, he requested permission from Goodman to go to his barracks to obtain his mail and upon his request being granted, he took the truck which he had been driving that morning in the performance of his duties, went to his barracks and then proceeded on U. S. Highway 31W off the Ft. Knox Reservation to

998

U. S. Highway 60 en route to Bashman's Liquor Store, in order to secure whiskey for his personal use.

Following the collision between the truck and the taxicab, Rayno was taken into custody by the Military Authorities and at 2:15 P.M. an alcoholic blood test was made in the laboratory at Fort Knox. The test was described as the "Nicloux Method", in which it was determined that there were 3.0 milligrams of alcohol per cubic centimeter of blood.

From the test and the testimony of William Leep, a member of the Kentucky State Police, who was the first to arrive at the scene of the accident, the Court concludes that Private Rayno was intoxicated at the time of the accident.

There is a conflict with respect to whether Goodman authorized Rayno to use the truck for the purpose of going to his barracks to get his mail. Goodman and other employees around the office, in which Goodman as building maintenance superintendent, saw nothing on the morning of the accident, to indicate that Rayno was under the influence of intoxicants, and at the time that Rayno requested permission to go to his barracks, Goodman was positive that he did not request the use of the truck.

Nothing appears in the evidence to indicate that any conduct or manner of making the request on the part of Rayno would indicate to Goodman that Rayno intended to go any place except to his barracks for the purpose of seeing about his mail, and Goodman says that in his opinion Rayno was entirely sober when he requested permission to go to his barracks.

It is concluded from the evidence that there was nothing in Rayno's request or his conduct or appearance at the time he made the request, that would have indicated to Goodman, in the exercise of ordinary care under the circumstances, that Rayno was intoxicated or unfit to be entrusted with the truck. It is further concluded that Rayno's use of the truck on the trip to Bashman's Liquor Store was not on any mission with which the United States was in any wise connected or in which it had any interest or on which Rayno could have been said to have been about the ordinary duties required of him, and was not a mission for which Goodman had any authority whatever to authorize the use of the truck.

## Conclusions of Law

I. This Court has jurisdiction of the subject matter here involved and of the parties. 28 U.S.C.A. § 2671 et seq.

■ II. The testimony with respect to the blood alcohol test was incomplete in that "there is missing a necessary link in the chin of identification" of the blood taken from Rayno for the purpose of conducting the test and reported to have been tested in the report interpreted by the witness Dr. Barnes. Novak v. District of Columbia, 82 U.S.App.D.C. 95, 160 F.2d 588.

III. In the use of the truck by Private Rayno, in going from Fort Knox Reservation to Bashman's Liquor Store for the purpose of procuring liquor for his personal use, Rayno was not acting within the scope of his employment as an employee of the Government. Parrish v. United States, D. C.Ga., 95 F.Supp. 80. In the Parrish case, the driver of an army truck was engaged in moving the personal belongings of an Army Colonel and had gotten the use of the truck by a written order of the Commanding Officer of the Colonel whose personal belongings were being transported, and the soldier driving the truck. Judge Conger held that such use of the truck was not within the scope of the employment of the driver and was illegal.

The same reasoning is patently applicable to the use of the truck in the case at bar by Private Rayno.

■ IV. The proximate cause of the collision between Rayno's truck and the taxicab driven by James E. Hook was the negligent operation of the Army truck by Private Rayno in driving at an excessive rate of speed and in failing to drive the truck to the right of the center of the highway, so as to avoid striking the taxicab which was being driven with due care and to his driver's right of the center of the highway.

## Conclusion

■ For the reason that the driver of the truck was not acting within the scope

of his employment and was not upon any mission with which the United States was in any wise connected or interested, and for the reason that the use of the truck by Rayno was obtained without authority from Goodman, for the purpose of making the trip upon which the accident occurred, the United States is in no wise liable for the damages arising out of the death of plaintiff's decedent Floyd L. Greenwood.

A judgment may be tendered dismissing the plaintiff's petition and adjudging to the defendant recovery of costs.