80 N.J. Super. 420 (1963)
194 A.2d 8
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
GEORGE PAPITSAS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 16, 1963.
Decided October 3, 1963.
*422 Before Judges CONFORD, FREUND and SULLIVAN.
Mr. Ralph B. Sussman argued the cause for appellant (Messrs. Friedman & D'Alessandro, attorneys; Mr. Sussman, on the brief).
Mr. Peter Murray, Assistant Prosecutor, argued the cause for respondent (Mr. Brendan T. Byrne, County Prosecutor of Essex County, attorney; Mr. John J. Francis, Jr., Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by FREUND, J.A.D.
Defendant appeals from a judgment of conviction entered against him in the Essex County Court, after a jury verdict. The indictment charged that on May 13, 1961 defendant willfully entered the apartment of Vincent Salierno with intent to steal, contrary to the provisions of N.J.S. 2A:94-1. He was sentenced to State Prison for a term of from three to seven years.
On May 13, 1961, at about 7:15 P.M., Mrs. Salierno, occupant of the penthouse apartment on the 21st floor at 377 South Harrison Street, East Orange, left on vacation after locking all doors and windows and setting a burglar alarm system. Shortly thereafter, at 8:48 P.M., a signal was received in the office of the Electro Protective Corporation, indicating that a door or window had been opened at the Salierno apartment. When a door or window is opened after the alarm is set a signal is automatically transmitted by telephone to the central office of the corporation, and a code number is registered. Upon receipt of the code number indicating the Salierno apartment, the corporation notified the police who promptly dispatched a radio car. Upon arrival, one policeman stood by the door of the apartment; he was soon *423 joined by other officers. Two detectives went to the roof, and from this vantage point they observed a broken window pane in the Salierno apartment on the terrace immediately below. One of the detectives shouted to the officers below that the apartment had been entered.
There were two stair wells on the 21st floor: one adjacent to the apartment door leading down, and a second leading to the roof. One of the officers standing outside the apartment heard a noise from behind the door of the near stairway, where defendant had been standing unnoticed. Upon being discovered he ran down the stairs, but was apprehended on the landing of the 20th floor. When searched he had on his person a pair of gloves, a penknife, a flashlight and a handkerchief. At trial there was some disagreement in the testimony of the arresting officers as to the floor on which defendant was searched. There was also some confusion in their testimony as to whether defendant had offered one of the policemen "a deal."
An inspection of the apartment revealed the following: the bedroom window glass had been broken; there were a desk and chair immediately below that window; there was "a footprint in the seat of the chair" and on the desk folder; broken glass and debris were on the desk top and on the floor; the desk and a chest of drawers were partially open and appeared to have been rifled.
During their investigation the police, for purposes of analysis, took samples of the stone on the roof, of the cement on the outside walls, and of the wood, dirt and paint from a flower box on the patio just outside the window. At the police station defendant's shoes were taken from him. John P. Brady, chief chemist and toxicologist for the State Police, testified that wood particles from the patio flower box and scrapings from the side wall of the patio, found on the seat of the desk chair, were also found on defendant's shoes; the penknife and gloves also contained particles from the patio wall and flower box.
*424 At the conclusion of the State's case counsel for defendant moved for a judgment of acquittal. The motion was denied, and the defense thereupon rested without offering any evidence.
On this appeal defendant argues that the motion for acquittal was improperly denied, on the ground that the State failed to prove defendant's guilt beyond a reasonable doubt. The issue to be decided is whether the evidence before the trial court, viewed in its entirety, and giving the State the benefit of all legitimate inferences therefrom, was such that the jury could properly find, beyond a reasonable doubt, that defendant had willfully entered the Salierno apartment with intent to steal. This is the accepted standard by which to test the propriety of the trial court's ruling on defendant's motion. State v. Fiorello, 36 N.J. 80, 86-87 (1961); State v. Graziani, 60 N.J. Super. 1, 13 (App. Div. 1959), affirmed 31 N.J. 538 (1960); State v. Goodman, 9 N.J. 569, 581 (1952).
The differences in testimony already mentioned do not undermine the otherwise wholly incriminating circumstantial evidence presented. So, too, the fact that the stairway where defendant was found hiding did not lead to the roof does not foreclose the possibilities that defendant came down the other stairway before the police arrived, or that he left the apartment by the front door. The probative value of circumstantial evidence is determined by the rules of ordinary reasoning such as govern mankind in the ordinary affairs of life. Circumstantial evidence can support a verdict against a defendant if it is sufficient to generate a belief of guilt beyond a reasonable doubt. State v. Bulna, 46 N.J. Super. 313, 318 (App. Div. 1957), affirmed 27 N.J. 93 (1958). If the trial judge is of the belief that a jury could reasonably find that the State had established defendant's guilt beyond a reasonable doubt, it is his duty to deny the motion for acquittal. State v. Fiorello, supra, 36 N.J., at p. 91. We are satisfied that the ruling in denying the motion was clearly supported by the evidence.
*425 Defendant contends that the possessions taken from him when he was searched should not have been offered at trial because they were obtained by illegal search and seizure. Although no motion to suppress was made before or at trial, he urges us to note this alleged impropriety under the plain error rule. It is doubtful that the plain error rule applies here. It is clear, however, that the search of defendant's person was made incidental to a lawful arrest and was therefore valid. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). Our criminal law designates entering with intent to steal as a high misdeameanor, N.J.S. 2A:94-1. At common law, a peace officer was authorized to arrest without a warrant where he had reasonable cause to believe a felony had been committed and that defendant had committed it. It has been held in this State that the same rule is applicable as to a high misdemeanor. See State v. Smith, 32 N.J. 501, 531 (1960), cert. denied 364 U.S. 936, 81 S.Ct. 383, 5 L.Ed.2d 367 (1961), in the light of Henry v. United States, 361 U.S. 98, 100, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). See also State v. Mpetas, 79 N.J. Super. 202, 207 (App. Div. 1963); Wimberly v. Paterson, 75 N.J. Super. 584, 595 (App. Div. 1962). But see State v. Smith, 37 N.J. 481, 492-94 (1962). The propriety of arrest here is underscored by the fact that breaking and entering with intent to steal was a felony at common law. Brown v. State, 62 N.J.L. 666, 696 (E. & A.), affirmed 175 U.S. 172, 20 S.Ct. 77, 44 L.Ed. 119 (1899). Under the circumstances presented here it was the duty of the arresting officers to apprehend the fleeing defendant and then to search him, for their own protection as well as properly to obtain any incriminating evidence. The argument of illegal search and seizure is without merit.
It is contended by defendant that the removal by the police of his shoes and other items and their use at trial as evidence constituted a violation of his privilege against self-incrimination, as provided by the rules of evidence, N.J.S. 2A:84A-1 et seq. N.J.S. 2A:84A-17, Rule 23(1), states *426 that "[e]very person has in any criminal action in which he is an accused a right not to be called as a witness and not to testify."
N.J.S. 2A:84A-19, Rule 25, provides:
"Subject to Rule 37, every natural person has a right to refuse to disclose in an action or to a police officer or other official any matter that will incriminate him or expose him to a penalty or a forfeiture of his estate, except that under this rule:
(a) no person has the privilege to refuse to submit to examination for the purpose of discovering or recording his corporal features and other identifying characteristics or his physical or mental condition; * * *"
The privilege thus restated by the Legislature protects against testimonial compulsion, and not against other forms of identification. See also 8 Wigmore, Evidence (McNaughton rev. 1961), § 2265, p. 386. We hold that the removal of an accused's shoes for the purpose of obtaining evidence which may link him to a crime does not violate his privilege against self-incrimination. Id., at p. 394. The courts of several other jurisdictions have considered this issue and are in accord with this view. See, e.g., Biggs v. State, 201 Ind. 200, 167 N.E. 129, 131, 64 A.L.R. 1085 (Sup. Ct. 1929); People v. Breen, 192 Mich. 39, 158 N.W. 142, 144 (Sup. Ct. 1916); People v. Van Wormer, 175 N.Y. 188, 67 N.E. 299, 301-02 (Ct. App. 1903); Payne v. State, 95 Okl. Cr. 117, 239 P.2d 801, 803 (Crim. Ct. App. 1952). See Annotation 64 A.L.R. 1089, 1093 b (1929).
The conviction is affirmed.