UNITED STATES of America

v.

Octabio Gerard DE LAROSA et al.

Appeal of Walter Lance NOEL, in No. 19065.

Appeal of Edward Walter FUNCHES, in No. 19066.

Appeal of Burrell Banks BASKIN, in No. 19067.

Appeal of Willard Thomas JONES, in No. 19113.

Nos. 19065–19067, 19113.

United States Court of Appeals, Third Circuit.

Argued June 7, 1971.

Decided Sept. 27, 1971.

Veto J. Rich, Pittsburgh, Pa., for appellant Noel.

H. David Rothman, Pittsburgh, Pa., for appellant Funches.

Franklin E. Conflenti, Cauley, Birsic & Conflenti, Pittsburgh, Pa., for appellant Baskin.

Stanton D. Levenson, Levenson & Snyder, Pittsburgh, Pa., for appellant Jones.

Charles F. Scarlata, Asst. U. S. Atty., Pittsburgh, Pa. (Richard L. Thornburgh, U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before STALEY and ADAMS, Circuit Judges, and GARTH, District Judge.

### OPINION OF THE COURT

GARTH, District Judge.

The four appellants in this case and one Octabio De Larosa were indicted for bank robbery and assault in the course of a bank robbery under 18 U.S.C. §§ 2113(a, d) & 2. De Larosa changed his plea to guilty prior to trial and then testified against the four remaining codefendants. All four were found guilty by a jury on both counts of the indictment.

The offense of which appellants were convicted was the robbery of $17,338.88 from the Hays Branch of the Pittsburgh National Bank on November 28, 1969. Employees of the bank and bystanders testified that four men wearing ski masks and rubber gloves entered the bank. A fifth, De Larosa, remained outside in a getaway car. The robbers who entered the bank carried handguns and fired a number of shots before or while leaving the bank.

After the robbery a bank teller found on her counter a cash-in slip which bore the imprint of a tennis shoe. During the investigation that followed, an expert determined that the imprint had been left by a shoe belonging to appellant Baskin. Also, a segment of a rubber glove was found in the vault of the bank and later matched with a pair of gloves which were found near appellant Baskin when he was arrested.

#### Accomplice Testimony

Appellants Noel, Funches and Jones assert that their convictions were supported by no evidence other than the testimony of De Larosa, admittedly an accomplice. While there were numerous witnesses to the commission of the robbery by five men, there was no evidence —direct or circumstantial—identifying Noel, Funches and Jones as perpetrators, other than De Larosa's testimony. They contend that due process of law under the Fifth Amendment is violated by a conviction based upon uncorroborated accomplice testimony. An accomplice is generally unreliable, appellants assert, because the accomplice is motivated to provide inculpatory testimony by an expectation of lenient treatment of his own offenses. Moreover, in this particular case the accomplice was, according to appellants, self-contradictory and personally biased against them.

Disregarding appellee's references to corroboration of De Larosa's testimony by other witnesses and assuming that the convictions below were based upon uncorroborated accomplice testimony alone, we nevertheless reject the contention of appellants. They cite no authority for their constitutional argument. In view of the frequent absence of proof of crime other than the account of a participant, a jury should be permitted as a general rule to convict when persuaded of the credibility of the testimony of an accomplice. "The mere fact that a witness hopes to receive a reduced sentence by testifying for the prosecution does not disqualify him." De Rosier v. United States, 407 F.2d 959, 962 (8th Cir. 1969). " * * * [T]here is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them." Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917); Holmgren v. United States, 217 U.S. 509, 30 S.Ct. 588, 54 L.Ed. 861 (1910). We follow the Supreme Court in holding that uncorroborated accomplice testimony may constitutionally provide the exclusive basis for a criminal conviction. Caminetti v. United States, *supra*; United States v. Zarra, 298 F.Supp. 1074, 1080 (M.D.Pa.), aff'd, 423 F.2d 1227 (3d Cir. 1969), cert. denied, 400 U.S.

826, 91 S.Ct. 52, 27 L.Ed.2d 56 (1970); De Carlo v. United States, 422 F.2d 237 (9th Cir. 1970); United States v. Vita, 294 F.2d 524 (2d Cir. 1961), cert. denied, 369 U.S. 823, 82 S.Ct. 837, 7 L.Ed. 2d 788 (1962) and Carmel v. United States, 369 U.S. 866, 82 S.Ct. 1032, 8 L. Ed.2d 85 (1962); Lockett v. United States, 374 F.2d 883 (5th Cir. 1967).

■ Apart from their constitutional objection appellants contend that there was insufficient evidence of guilt to support the verdict. This argument must be rejected. De Larosa identified each of the appellants as participants in the crimes charged. A review of the record indicates that the accomplice's testimony was not so weak and inconsistent a : to require a directed verdict of acquittal. His testimony was in fact corroborated with respect to various details of the robbery other than the identification of Noel, Funches and Jones as perpetrators.[1]

■ In a related argument appellants Funches and Jones attack the trial court's charge to the jury for failing to state that accomplice testimony comes from a corrupt or polluted source. The trial court instructed the jury that it should "keep in mind that such [accomplice] testimony is always to be received with caution, and weighed with great care," but the judge did not use the word "corrupt" or "polluted."

Contrary to appellants' contention, this Court in United States v. Fawcett, 115 F.2d 764 (3d Cir. 1940), did not establish a mandatory requirement that accomplice testimony be described as emanating from a corrupt or polluted source. It was merely held in *Fawcett*

that, viewing the charge as a whole, it was not error for the trial court to instruct the jury that an accomplice's testimony was "corroborated in some small degree." The trial court in *Fawcett* had characterized accomplice testimony as coming from a polluted source. This Court did not indicate that "polluted source" was an essential element of the charge, rather than a phrase which a trial court might in its discretion use when requested by the defendant.

We find no merit in appellant Funches' other contentions regarding the alleged overemphasis in the charge of evidence which corroborated the testimony of the accomplice.

### Newspaper Publicity

Appellants Funches and Jones assign as error the denial of their motions for a mistrial on the ground of exposure of the jury to prejudicial publicity. On the evening of May 13, 1970, after the second day of trial, shots were fired into the home of De Larosa, the chief witness for the Government. The incident was reported by two local papers on May 14 and 15. The articles did not, however, identify the individuals responsible for the shooting. One of the articles indicated that all four defendants were in jail. The other article noted that no suspects of the shooting had been arrested yet. From either of these facts it could have been inferred that the appellants did not personally do the shooting.

When the publicity was brought to the attention of the Court on May 15, the trial judge conducted a voir dire to determine the exposure of the jury to these articles. Four jurors admitted to some exposure to this publicity.[2] The

---

1. De Larosa testified that the getaway car was stolen near the Central Catholic School and that it was a 1964 dark blue Pontiac. The owner of the car corroborated these details. A waitress at the hotel adjacent to the bank corroborated De Larosa's testimony that he waited at the wheel of the getaway car which was parked one car length away from the bank during the robbery. De Larosa stated that the appellants fired three or four shots as

they left the bank. Two bank employees stated that four shots were fired, one testified that there were five, and another recalled four or five. There was also corroboration of a telephone call made by De Larosa after the robbery and of the location and occupants of the apartment to which the robbers fled.

2. Juror No. 8 admitted that he had read one of the articles. Juror No. 5 indicated

Court asked those who had been exposed: "With the knowledge that you have of that article, do you feel that you are able to continue as a juror in this case, and decide the facts, and bring in a verdict based solely upon the facts you have heard in the courtroom and the evidence which has been adduced in the courtroom without being influenced * * * [by the article]?" After receiving affirmative responses from the jurors, the Court went further, and inquired whether the exposed jurors had discussed the articles with the other jury members. Upon being satisfied that they had not, the Court denied the motion for a mistrial.

■ The trial court has broad discretion in determining whether in the special facts of a particular case a motion for a mistrial should be granted due to prejudicial publicity. Marshall v. United States, 360 U.S. 310, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959). There was no abuse of discretion in the denial of the motion below.

■ The extent of the exposure of the jury to the press publicity was rather limited in this case. Only a small minority had been exposed. In addition, the jurors who had been exposed claimed they were able to deliberate impartially despite this publicity.

While it is true that assurances from the jury were not accepted in *Marshall*, *supra*, the two situations are hardly analogous. In *Marshall*, the newspaper articles were seen by seven of the jurors. The trial court had previously ruled that the information printed was so prejudicial that it could not be directly offered as evidence, and had rejected an offer of such evidence. The *Marshall*

articles directly referred to the defendant and *his* prior criminal record and activities. Here, by contrast, we have a minimal exposure of jurors to information concerning an incident the motive for which is unknown and the perpetrator unidentified.

■ After the denial of his motion for a mistrial, Funches requested the trial court to give a cautionary instruction [3] regarding the publicity in the final charge to the jury. The Court denied the request, but the jury was instructed as follows: "* * * you would violate your sworn duty if you base your verdict on anything but the evidence heard in the courtroom and these instructions on the law." It would have been better practive to give the charge requested, which unmistakably prohibited consideration by the jury of information obtained from the news media. However, in view of the instruction actually given in the final charge and the thorough voir dire conducted earlier during the trial, we conclude that there was no prejudice in the denial of the requested instruction.

### Reference to Prior Imprisonment

■ Appellant Noel asserts error in the denial of his motion for severance and in the denial of his motion for a mistrial. Both asserted errors stem from Noel's claims that he was prejudiced by appellant Jones' testimony that they had met at Camp Hill, a correctional institution in Pennsylvania. Noel had deliberately declined to testify in order to avoid disclosure of his prior record upon cross-examination.

We deal with the severance motion together with other matters concerning

---

that he had not read the article but that someone had explained it to him. Juror No. 1 denied reading the article but stated that someone had told him all about it. Alternate Juror No. 2 indicated that he had read the caption and probably the first paragraph of one of the articles.

3. The requested instruction was as follows:
   "You must disregard any and all reports which you have read, seen or heard

in or through the news media; any statements or inferences contained therein. Such matters are not facts in evidence in this case because they are not relevant, competent or material to the issues which have been developed in this Courtroom. You must not permit such matters to influence your judgment in arriving at a true verdict in this case."

severance in a latter portion of this opinion. As to the denial of the mistrial motion predicated on this ground, we affirm the trial court's action.

Although the fact of imprisonment, like prior convictions, may create the impression of a predisposition to criminal activity, the prejudice in this case was adequately cured by an instruction to the jury to disregard the reference to Camp Hill.[4] While curative instructions may at times be ineffective, Krulewitch v. United States, 336 U.S. 440, 453, 69 S.Ct. 716, 93 L.Ed. 790 (1949) (concurring opinion); Delli Paoli v. United States, 352 U.S. 232, 247–248, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957) (dissenting opinion), *overruled*; Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), this is surely not the case where the prejudicial nature of the evidence is relatively mild and the manner of its presentation undramatic. The case of United States v. Clarke, 343 F.2d 90 (3d Cir. 1965), cited by Noel, is distinguishable since the inadmissible evidence presented to the jury in that case went to the heart of the defense relied upon, that is, entrapment.

### Severance

Appellants Noel, Funches and Jones complain of the denial of motions for severance made prior to and during the trial. Under Fed.R.Crim.P. 14, the burden was on appellants to show prejudice caused by the joinder of the four appellants for trial together. United States v. Lipowitz, 407 F.2d 597, 601 n. 15 (3d Cir.), cert. denied, Smith v. United States, 395 U.S. 946, 89 S.Ct. 2026, 23 L.Ed.2d 466 (1969). The denial of motions for severance will not be reversed in the absence of an affirmative showing of an abuse of discretion by the trial court. United States v. Barrow, 363 F.2d 62, 67 (3d Cir. 1966), cert. denied, 385 U.S. 1001, 87 S.Ct. 703, 17 L. Ed.2d 541 (1967).

Among the grounds urged in support of their motions for severance, appellants Noel, Funches and Jones contend that they wre prejudiced by the admission of evidence incriminating the fourth appellant, Baskin, but not relevant to them. A pair of surgical gloves useful in eliminating fingerprints was found near Baskin at the time of his arrest and a segment of one of these gloves was found in the bank that had been robbed. A cash-in slip of the bank was found on a teller's counter, and on the slip a tennis shoe had left an imprint during the robbery. The sole of Baskin's tennis shoe matched the imprint on the cash-in slip. All of these tangible items were introduced at trial, but they could not have been admitted at a trial of Noel, Funches or Jones, had they been tried individually (or even together, in a trial separate from Baskin).

The trial court instructed the jury that all of the tangible evidence described above was admissible against Baskin only. The jury was further admonished to deliberate upon the guilt or innocence of each defendant separately, without consideration of evidence of the acts of others.[5] However, counsel for

---

4. The Court charged as follows:
   "You may recall that one of the other defendants mentioned that he had met Mr. Noel in Camp Hill. You . are charged that this matter is in no way material to this case, and you should wholly disregard it in your consideration of the evidence against Mr. Noel."

5. The final charge to the jury included the following:
   "In corroboration of Mr. De Larosa's testimony as to the defendant Baskin *only*, the government has introduced expert testimony that Government Exhibit 39, the fingertip found after the robbery in the bank's vault, was originally a part of Government Exhibit 37, one of the surgical gloves found near the place of Baskin's arrest.
   "Further evidence introduced *only* against the defendant Baskin involved Government Exhibit 36, two pieces of yellow paper containing a footprint found on a counter near the bank teller's areas. * * *
   "Members of the jury, it is your duty to give separate consideration to each

the Government in its closing statement made the following statement:

"I mentioned the shoes and the gloves as being specific corroboration with respect to Mr. Baskin, but they also supply general corroboration with respect to the other defendants in that they add credibility to the testimony, the overall testimony, of Mr. De Larosa [the accomplice]."

The Government's statement, suggested that the tangible exhibits could be considered against all the appellants as indirect support of De Larosa's identification of them as perpetrators. The trial court, however, correctly indicated to the jury thereafter that the law permits no use against one defendant of evidence admitted solely against a co-defendant.[6]

In addition, appellants Noel, Funches and Jones complain that Baskin and the witnesses called by him in support of his alibi defense created an extremely unfavorable impression on the jury to the prejudice of all the defendants. Baskin wore clothes which, according to his co-defendants, are commonly associated with black militants. The impression was apparently reinforced by testimony that one of Baskin's witnesses knew him by the name "Roshee."[7] Furthermore, appellants (other than Baskin) argue that Baskin's witnesses were somewhat hostile and that they all had prior criminal records. One of Baskin's witnesses had previously been convicted of perjury, and the record of that conviction was admitted into evidence.

Although taken together, Baskin's appearance, that of his witnesses and the physical evidence attributed to him, might give rise under the circumstances to that degree of prejudice to co-defendants which would justify severance, we cannot say that in the entire context of the trial, the trial court abused its discretion in denying severance to the appellants herein. The various severance motions were brought under Fed.R.Crim.P. 14, which is addressed to the discretion of the trial court. United States v. Barrow, *supra*. We are mindful that the trial court in the exercise of its discretion must have been aware of the highly relevant considerations of judicial economy and the tactical disadvantage to the government of the disclosure of its case. Since not all of the asserted grounds for severance could be anticipated or advanced at the outset of the trial, it was essential that the trial court balance all factors and potential prejudice at the stage that each such motion for severance was made. Having reviewed the entire record, and having in mind those considerations necessarily involved in ruling on severance motions made dur-

individual defendant. When you do so you should analyze what the evidence in the case shows with respect to that individual, leaving out of consideration entirely any evidence admitted solely against some other defendant or defendants. Each defendant is entitled to have his case determined from the evidence as to his own acts and statements and conduct, and any other evidence in the case which may be applicable to him." [emphasis added.]

6. In passing, we note that appellant Funches had requested a charge regarding separate and independent corroboration of accomplice testimony as to each defendant. The requested instruction was as follows:

"Even if you find corroboration of De Larosa's testimony as to any one of the defendants, you must be careful that such corroboration does not influence your judgment as to any of the other defendants. The fact that there is corroboration of his testimony as to any one of the defendants, should not be considered by you as giving strength to his testimony as to any other defendant when there is no independent corroboration as to that other defendant. The evidence against each defendant must be considered separately, and you must determine separately if there is any corroboration of De Larosa's testimony as to each defendant."

The substance of this requested instruction is found in the court's final charge, quoted, at n. 5 *supra*. Hence, there was no error in the trial court's refusal to deliver the particular charge requested.

7. According to appellant Jones, the name "Roshee" is commonly associated with black militants.

ing trial (as distinct from those made prior to trial), we hold, for the reasons set forth below, that the trial court did not abuse its discretion when it denied the appellants' motions for severance.

■ A defendant is not entitled to a severance merely because the evidence against a co-defendant is more damaging than the evidence against him. McHale v. United States, 130 U.S.App. D.C. 163, 398 F.2d 757, 758, cert. denied, 393 U.S. 985, 89 S.Ct. 462, 21 L.Ed.2d 447 (1968). While such a disparity in the proofs is sufficient in certain cases, the primary consideration is whether the jury can reasonably be expected to compartmentalize the evidence as it relates to separate defendants in view of its volume and limited admissibility.

Appellant Jones claims that United States v. Kelly, 349 F.2d 720, 759 (2d Cir. 1965), cert. denied, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966), is apposite to the instant case. In *Kelly,* Shuck, one of three individual co-defendants who had been indicted for 160 counts (of which seven were submitted to the jury) of conspiracy and substantive stock fraud, was implicated far less by the Government's evidence than were his co-defendants. Shuck's name was not even mentioned until more than three months of the trial had been completed. (The trial's entire duration exceeded nine months.) The trial court's denial of Shuck's motion for severance was reversed as an abuse of discretion.

■ In contrast to the extraordinary volume of the evidence and complexity of the charges which the *Kelly* jury was required to assimilate, the jury in the instant case deliberated on essentially a single criminal transaction.[8] The task of the jury was substantially less demanding here than in a case based on an indictment containing numerous counts and naming the movant for severance in but one or two counts.

The cases of United States v. Varelli, 407 F.2d 735 (7th Cir. 1969), and Kot-teakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), cited by appellant Funches, are also distinguishable since they relate to the peculiar prejudice inherent in the joint trial of two or more groups of individuals who allegedly participated in separate conspiracies.

■ Severance was not required by the unfavorable impression which may have been created by Baskin's identification with an unpopular social and political group. In United States v. Bentvena, 319 F.2d 916 (2d Cir.), cert. denied [Ormento v. U. S., Di Pietro v. U. S., Fernandez v. U. S., Panico v. U. S., Galante v. U. S., Loicano v. U. S., Mancino v. U. S., Sciremammano v. U. S., Mirra v. U. S., 375 U.S. 940, 84 S.Ct. 345, 346, 353, 354, 355, 360, 11 L.Ed.2d 271, 272 (1963), rehearing denied, Fernandez v. U. S., 375 U.S. 989, 84 S.Ct. 515, 11 L.Ed.2d 476 and Galante v. U. S., 377 U.S. 913, 84 S.Ct. 1162, 12 L.Ed. 2d 183 (1964)], the denial of a severance was affirmed notwithstanding the fact that a co-defendant had climbed into the jury box and thrown a chair at the Assistant United States Attorney, 319 F.2d at 929–930. *Accord,* Brown v. United States, 126 U.S.App.D.C. 134, 375 F.2d 310, 316 (1966), cert. denied, 388 U.S. 915, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967).

The asserted hostility, incredibility and disreputability of Baskin and his witnesses, when added to the above-described grounds for severance, do not persuade us that the trial judge abused his discretion. Appellants have not demonstrated that they were substantially prejudiced by these circumstances. Consequently they have failed to sustain their burden of proof of an abuse of discretion.

■ Nor was it an abuse of discretion to deny appellant Noel's motion for severance after Jones' testimony regarding a prior imprisonment of Noel. The trial judge is in a uniquely favorable po-

8. Bank robbery and assault in connection with the bank robbery.

sition to ascertain the effect on the jury of allegedly prejudicial evidence.

### Suppression of Evidence

We now turn to the contentions of appellant Baskin. The exhibits described above in connection with the motion for severance were introduced against appellant Baskin only. Of these, Baskin raises no constitutional objection to the admission of the cash-in slip or the segment of a surgical glove. The Fourth Amendment to the U. S. Constitution was invoked unsuccessfully by appellant Baskin at trial in a motion to suppress the tennis shoes and an objection to the admission of the pair of surgical gloves.

■ The record indicates that the surgical gloves had been abandoned, apparently by Baskin, and then picked up alongside the wall of a bus shelter by law enforcement officers. One who abandons personal property may not contest the constitutionality of its subsequent acquisition by the police. United States v. Martin, 386 F.2d 213 (3d Cir. 1967), cert. denied, 393 U.S. 862, 89 S.Ct. 142, 21 L.Ed.2d 130 (1968). Whether a proper foundation had been laid for the admission of the gloves is a separate issue which will be discussed below.

The trial court held an evidentiary hearing outside the presence of the jury to determine whether Baskin's tennis shoes, offered as exhibits by the Government, should be suppressed. The resolution of the motion turned upon a direct conflict of factual assertions—the appellant contended that the police had forcibly taken one of his shoes from him,[9] while the police officers contended that the shoes had been voluntarily handed to them by appellant.[10] The court ruled in

favor of the Government and denied the motion.

■ Although a heavy burden rested upon the Government to show consent by appellant, Watson v. United States, 101 U.S.App.D.C. 350, 249 F.2d 106 (1957), sufficient evidence was presented to meet that burden. The court's ruling, based on the credibility of the witnesses and weight of the evidence, will not be disturbed.

■ Appellant Baskin further contends, however, that he did not knowingly waive his rights under the Fourth Amendment. He was in custody when the tennis shoes were obtained. Agent Anderson of the Federal Bureau of Investigation testified that he had instructed appellant Baskin that Baskin did not have to voluntarily give him the tennis shoe. Anderson further stated that he had instructed Baskin that " * * * it could be used against him, and * * * explained clearly that I [Anderson] intended to have a comparison made between his shoe and the footprint" left on the cash-in slip which had been found in the bank after the robbery. Anderson testified that he " * * * pointed out that the shoe and the print, in my opinion, appeared to be the same. * * * " In addition to these warnings, Baskin had read and had been instructed regarding the warnings required by Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), reh. denied, California v. Stewart, 385 U.S. 890, 87 S.Ct. 11, 17 L.Ed.2d 121 (1966), and had signed a Waiver of Rights form.[11]

Under these circumstances we believe that Baskin had been sufficiently warned of his rights and the possible consequences of a waiver thereof. We

9. Baskin admitted that he voluntarily gave the second shoe to police after they had allegedly "snatched" the first from him.

10. The Government stipulated that no search warrant had been obtained by the police.

11. Although it may be true, as appellant contends, that a warning with respect to

the right to remain silent does not give advice of the right to refuse to consent to a search (*but see* Gorman v. United States, 380 F.2d 158, 164 [1st Cir. 1967]) the *Miranda* warnings no doubt were effective in lessening the pressures of the custodial setting. Gorman v. United States, *supra* at 164.

do not decide whether a specific Fourth Amendment warning (that in the absence of consent a search warrant would have to be obtained) is ever mandatory. In the facts of this case, none was necessary. *Cf.* Gorman v. United States, n. 11, *supra*; Byrd v. Lane, 398 F.2d 750 (7th Cir. 1968), cert. denied, 393 U.S. 1020, 89 S.Ct. 625, 21 L.Ed.2d 564 (1969).

█ Baskin asserts that the trial court erred in admitting the tennis shoes since his arrest was illegal and since the shoes were obtained as a result of this police action. Illegal detention must not yield the prosecution any evidentiary advantage. Bynum v. United States, 104 U.S.App.D.C. 368, 262 F.2d 465 (1958). However, we find that there was sufficient evidence here to support a finding that the police officers in fact had probable cause to arrest Baskin.

█ There is testimony in the record that shortly after the Hays branch of the Pittsburgh National Bank had been robbed, the getaway vehicle used by the perpetrators was found. One block from the getaway vehicle near a bus shelter appellant Baskin was seen by the police. They had been given the following description of the perpetrators: Negro, wearing dark clothing and wearing tennis shoes. Baskin fit this description when discovered by the police. Patrolman Counahan, one of the investigating officers, testified that Baskin did not answer their initial questions regarding identification. In Baskin's hair a piece of colored yarn was found, which coincided with the officers' knowledge that the perpetrators had worn ski masks. On the basis of the foregoing evidence the officers placed Baskin under arrest.[12]

Appellant Baskin directs the Court's attention to Roundtree v. State, 11 Md. App. 51, 272 A.2d 805 (Ct.Spec.App. 1971), where it was held that probable cause could not be based on mere correspondence of the suspect with the general description of young, male, Negro, average height, wearing tennis shoes. In *Roundtree*, however, the arrestee's traits differed in several respects from other items in the description given to the police. (The arrestee was actually 27 years old, wore green pants and weighed considerably more than 135 pounds, contrary to the description given of 18–22 years old, wearing white pants and weighing 135). Furthermore, in the instant case Baskin not only met the general description, but he also was found near the getaway car, refused to answer questions at first, and was linked to an instrumentality of the crime, the ski mask.

█ Nor do we find merit in Baskin's argument that his right under the Fifth Amendment to be free from compulsion to incriminate himself was violated when he yielded his tennis shoes to the police. Only *testimonial* compulsion to incriminate oneself is prohibited by the Fifth Amendment. California v. Byers, 402 U.S. 424, 431, 91 S.Ct. 1535, 1539, 29 L.Ed.2d 9 (1971); 8 Wigmore, Evidence § 2265 (McNaughton rev. 1961). Taking off one's shoes and handing them to police officers involve no communication of thought or information. Warden v. Hayden, 387 U.S. 294, 302–303, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (dictum); State v. Papitsas, 80 N.J.Super. 420, 194 A.2d 8 (App. Div.1963); State v. Speciale, 96 N.J. Super. 1, 232 A.2d 421 (App.Div.), certif. denied, 50 N.J. 291, 234 A.2d 400 (1967). *cf.* United States v. Wade, 388 U.S. 218, 221–223, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910).

12. Appellee contends that probable cause was derived in part from the discovery of a pair of surgical gloves in the bus shelter where Baskin had previously been observed. Appellee also points to testimony that Baskin gave "smart answers" to police. However, the record shows that both of these events occurred after Baskin was placed under arrest, and therefore they may not be considered to justify the arrest.

*Foundation of Tangible Evidence*

Appellant Baskin asserts that the trial court erred in admitting the tennis shoes, surgical gloves, segment of a surgical glove and cash-in slip [13] on the ground that a proper foundation had not been laid. He contends that the Government was required, but failed to show an uninterrupted chain of custody of these tangible items and did not sufficiently prove that these exhibits were in the same condition when introduced as at the time of the crime. Nor was the possibility of tampering with or altering the exhibits disproven by the Government, according to Baskin.

■ Baskin argues that evidence may never be introduced if the "chain of custody" is not complete and exclusive. However, the cases cited for this proposition, Greenwood v. United States, 97 F.Supp. 996 (D.Ky.1951), and Novak v. District of Columbia, 82 U.S.App.D.C. 95, 160 F.2d 588 (1947), were decided prior to Gallego v. United States, 276 F. 2d 914 (9th Cir. 1960), in which this principle was rejected in favor of a rule granting discretion to the trial court. *Accord,* West v. United States, 359 F.2d 50, 55 (8th Cir.), cert. denied, 385 U.S. 867, 87 S.Ct. 131, 17 L.Ed.2d 94 (1966); Brewer v. United States, 353 F.2d 260 (8th Cir. 1965).

"The trial judge's determination that the showing as to identification and nature of contents is sufficient to warrant reception of an article in evidence may not be overturned except for a clear abuse of discretion." *Gallego, supra* at 917.

■ The trial judge's exercise of discretion must be reviewed in the light of the following factors: " * * * the nature of the article, the circumstances surrounding the preservation and custody of it, and the likelihood of intermeddlers tampering with it." 276 F.2d at 917.

■ The pair of gloves and the segment of a glove were introduced to show that appellant Baskin (near whom the pair of gloves was found) had been in the bank (where the segment of a glove was found). Similarly, the tennis shoes and the cash-in slip (upon which an imprint of a shoe was left) were probative of Baskin's presence in the bank at the time of the robbery. The Government produced experts to show that the glove segment had been torn from one of the gloves and that the footprint on the cash-in slips matched the sole of one of Baskin's tennis shoes. Both comparisons depended upon microscopic analysis of the physical properties of these exhibits. In one case the "projections, striations, and fissures" [14] of the glove segment were compared to those of the glove from which, by hypothesis, it had been torn. In the other, the shape, tread and characteristic markings of the sole of the tennis shoe were compared to the imprint alleged to have been made by the wearer when he stepped on the cash-in slip.

When cross-examined regarding the possibility of fabrication of distinctive features on the sole of Baskin's shoe, the Government's expert testified:

"If we get up to the amount of points [features] that I have examined, then it's my opinion that it's not reasonable to believe that we could reproduce this if given the brand new shoe."

The Government expert who testified as to the glove segment stated unequivocally that the segment came from one of the gloves (found near Baskin). His examination, made with the aid of a microscope, revealed that the two exhibits (i. e., the segment and the glove) "fitted

13. Exhibits 36 through 41. Exhibit 36 is actually composed of two cash-in slips stapled together. An imprint was left by a shoe largely upon one slip, but a narrow portion of the imprint was left

upon a second slip, which lay nearly wholly underneath the other slip during the robbery.

14. Testimony of Special Agent Clark of the F.B.I. Laboratory in Washington, D. C.

together exactly." This expert was not cross-examined on the subject of deterioration, tampering or alteration of the glove exhibits. It was no doubt clear to counsel, as it must have been to the trial judge, that any attempt to trim the edge of either the glove or the segment, or the edges of both, in order to create a counterfeit "match-up" could not have succeeded. The counterfeiting of such a "match-up" could not have been so precise in terms of the "projections, striations and fissures" as to escape detection when subjected to microscopic examination.

The Government having satisfied its initial burden, it was incumbent upon Baskin to come forward with evidence in support of his contentions of tampering, alteration and irregular conduct. *Cf.* Brewer v. United States, *supra*. No such evidence appears.

It is true that there were gaps in the testimony regarding the identity of the custodians of the exhibits and no testimony regarding the exclusivity of the custody at any given time.[15] However, appellant Baskin " * * * admits that * * * [the exhibits in question] were identified by officers because they had placed their initials on them. * * *"[16]

We conclude that it was proper for the trial judge to overrule appellant's objections to the admission into evidence of the exhibits in question. The entire record reveals that " * * * in reasonable probability the article[s] ha[d] not been changed in important respects. * * *" *Gallego, supra* at 917. Consequently, there was no abuse of discretion or error in the admission of these exhibits.

The judgments of conviction against Noel, Funches, Jones[17] and Baskin are in all respects affirmed.

Affirmed.

---

15. There was no testimony regarding the transmittal of the gloves from Lieutenant Krah to Detective Moore, of the cash-in slip from Special Agent Watkins to Agent Meek and from Special Agent Anderson to Detective Barrett, or of the tennis shoes from Anderson to Barrett. Mrs. Whitesell, a bank clerk, testified that she gave the segment of a glove to a bank supervisor, while F.B.I. Special Agent Bogal stated that Mrs. Whitesell gave that item to him.

16. Brief for Appellant Baskin, pp. 46–47.

17. In view of the fact that we have found no errors below, the argument of Funches and Jones that a new trial is required by the cumulative effect of alleged errors below is rejected.