GOVERNMENT OF the
VIRGIN ISLANDS

v.

DOWLING, Reuben.

Appeal of Reuben DOWLING.

Nos. 86–3289, 86–3290.

United States Court of Appeals,
Third Circuit.

Argued Dec. 5, 1986.
Decided March 19, 1987.

Rehearing Denied June 15, 1987.

James W. Diehm, U.S. Atty., D. Virgin Islands, Andrew J. Reich, James S. Carroll (argued), Asst. U.S. Attys., Christiansted, St. Croix, U.S. Virgin Islands, for appellee.

John Chamble, Melody L. Moss (argued), Asst. Federal Public Defenders, Christiansted, St. Croix, U.S. Virgin Islands, for appellant.

Before SLOVITER, STAPLETON and ROSENN, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

On July 8, 1985, the First Pennsylvania Bank in Frederiksted, St. Croix was robbed. Appellant Reuben Dowling was arrested and charged with both federal and territorial offenses in connection with the robbery. The first trial for those offenses, held in the District Court for the Virgin Islands, resulted in a hung jury on November 14, 1985. On April 2, 1986, after a second trial in that court, a jury convicted Dowling of all charges.

During the second trial, the trial judge received a note from a juror that indicated that the jury had been exposed to extra-record information both about the facts of the case and about Dowling's past criminal record, which included a prior conviction for bank robbery. The judge then addressed the members of the jury in banc and asked each to raise his juror's card if he or she had been exposed to any information that "had rendered [him or her] incapable of giving a fair trial." Appendix to Appellant's Br. at 20. When no one affirmatively responded to its inquiry, the trial court denied the defendant's motion for a mistrial.

On appeal, Dowling asserts that his right to a fair trial was violated by the district court's failure to conduct a thorough and individual examination of each juror. In addition, Dowling contends that the district court committed "plain error" when it failed to ascertain what the members of the jury had heard and thereby make an informed judgment about whether they could be counted on to judge impartially on the basis of the record evidence alone.

Although we find that the trial judge did not abuse his discretion in declining to individually question the jurors, we hold that the trial court committed reversible error in failing to conduct a voir dire of the jury that would have permitted the court to evaluate the potential prejudice to the defendant.

### I.

During the period following Dowling's arrest for the bank robbery, he received considerable publicity in the local press. Newspaper articles indicated that Dowling had previously been convicted of bank robbery and had been released from prison on probation in May 1985. The articles further indicated that, following his release, Dowling had been charged and later acquitted of an attempted armed robbery on July 20, 1985. They also indicated that he had been charged with murder for the shooting death of a storeowner arising out of an attempted armed robbery on September 25, 1985.

During the second trial, defense counsel informed the trial court that that morning's edition of the St. Croix Avis contained an article about the trial that revealed that Dowling had previously been convicted of bank robbery, that he had been acquitted of the September shooting death of the

storeowner, and that his bail had been revoked following that acquittal. Defense counsel asked that the court determine whether the jury had been exposed to this article and that the court admonish the jury to avoid exposure to media reports relating to the trial. The trial judge then asked the jury in banc whether any juror had read the article in the Avis. Upon receiving no response, the court admonished the jury to ignore media reports relating to the trial until the trial was over. Thereafter the prosecution concluded its evidence and Dowling rested his case without offering any evidence.

Before closing argument, the trial judge received a note from Diane Delgado, an alternate juror, which read as follows:

> It is my duty to report to you that one of the jurors is being prejudice [sic] on this case—that we noticed it yesterday when she stated that she listened to the news and read the newspaper—also that she even knew the case from beforehand and other crimes that Mr. Dowling committed. We feel that something must be done before the final part is said.

*Id.* at 1. The note identified the prejudiced juror as Carmencita Richardson.

The district court informed counsel of the note in chambers and counsel agreed to excuse Richardson. Defense counsel further sought independent, *in camera* examination of each juror to determine the extent to which Richardson had influenced each juror with information concerning the case and Dowling's prior criminal record. The prosecution argued that the court should utilize general questions to the whole jury to ascertain whether individual questioning would be necessary. The court decided to question Delgado individually and, at least initially, ask only general questions of the entire jury. In speaking of his intentions with respect to the interrogation of Delgado, the trial judge stated,

"In the course of this I'll ask if she knows of any other jurors to whom these complaints had been communicated and we will go from there." *Id.* at 17.

At a side bar conference with counsel, the trial judge questioned Delgado as to whether she could be fair to all parties and render a verdict based solely on the evidence presented in court. Upon Delgado's affirmative response, counsel agreed to seat Delgado in place of Richardson.[1] The trial judge then asked whether Delgado had witnessed Richardson supplying "to other jurors any information which would tend to prejudice any other juror." *Id.* at 19. The following was Delgado's response and the judge's reaction to it:

> THE JUROR: In that case I am not too sure. She had mentioned that in front of all of the jurors and they were very uncomfortable about the situation so—

> THE COURT: Then I'm going to make a general inquiry of the jurors. Thank you.

*Id.* Given the context, we believe Delgado's uncertainty was about whether other jurors were in fact prejudiced and not about whether they were exposed to potentially prejudicial information concerning the case and Dowling's criminal record. Clearly, the district court understood the second sentence of Delgado's response to mean that all of the jurors had been exposed to such information.

The district judge then questioned the jury in banc. He asked the jurors to raise their juror's cards if they had "received any information in this matter, that has not been part of the evidence in the case which you consider has rendered you incapable of giving a fair trial to either side in this case." *Id.* at 20. The court further asked jurors to identify themselves if they were

---

1. The defense's acceptance of Delgado as a juror does not undercut its contention that meaningful inquiry into the possibility of juror taint was required. Delgado's reaction to Richardson's comments forcefully demonstrated her personal commitment to a fair trial for the defendant and provided assurance that her assertion of impartiality could be credited. By contrast, the other jurors did not report Richardson's revelations to the judge despite the fact that they knew they were not supposed to be exposed to extrarecord information, and the judge's failure to meaningfully inquire into their state of mind deprived counsel and the court of any basis for evaluating their implicit protestations of impartiality.

unable to "decide the case solely on the basis of the evidence that has been received in the case." *Id.* The district court received no response to its questions.

Defense counsel then moved for a mistrial on the ground that Richardson had tainted the jury and that the court's general inquiry was insufficient to determine the extent of the prejudice. *Id.* at 21. Defense counsel did not request that the court further question the jury in banc. The prosecutor took the mistrial motion to imply a renewed request for individual, *in camera* questioning of the jurors and objected on the ground that "any more probing [might] result in prejudice." *Id.* at 22. The trial judge expressed the same concern, but did ask whether any juror would like to discuss the matter privately at side bar. Upon receiving no response, the trial judge denied the motion for a mistrial. Closing arguments ensued.

## II.

■ Dowling asserts that the trial judge erred in not questioning each juror individually out of the presence of the other jurors. Where there is a significant possibility that a juror or potential juror has been exposed to prejudicial extra-record information, we have expressed our preference, in general, for individual, *in camera* questioning of the possibly-tainted juror. *Government of the Virgin Islands v. Rosado,* 699 F.2d 121, 125 (3d Cir.), *cert. denied,* 464 U.S. 832, 104 S.Ct. 113, 78 L.Ed.2d 114 (1983); *United States v. Starks,* 515 F.2d 112, 124–25 (3d Cir.1975); *United States v. D'Andrea,* 495 F.2d 1170, 1173 n. 8 (3d Cir.), *cert. denied,* 419 U.S. 855, 95 S.Ct. 101, 42 L.Ed.2d 88 (1974); *United States ex rel. Doggett v. Yeager,* 472 F.2d 229, 234 (3d Cir.1973); *United States v. Addonizio,* 451 F.2d 49, 67 (3d Cir.1971), *cert. denied,* 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972).

Our preference reflects the fact that "an individualized examination is the most effective manner by which to discover latent prejudices on the part of a particular juror." *United States v. Dansker,* 537 F.2d 40, 56 (3d Cir.1976); *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977); *see Rosales-Lopez v. United States,* 451 U.S. 182, 188, 101 S.Ct. 1629, 1634, 68 L.Ed.2d 22 (1981) ("[trial courts] must reach conclusions as to impartiality and credibility by relying on their own evaluations of demeanor evidence and of responses to questions"). We think it asks a lot to expect jurors to acknowledge in response to in banc questioning that they have been exposed to extra-record information that they did not report to the trial judge. *See United States ex rel. Doggett v. Yeager,* 472 F.2d at 234–35 (quoting *Coppedge v. United States,* 272 F.2d 504, 507–08 (D.C. Cir.1959), *cert. denied,* 368 U.S. 855, 82 S.Ct. 92, 7 L.Ed.2d 52 (1961)). Moreover, in banc questioning risks spreading taint where none exists.

■ At the same time, the trial judge develops a relationship with the jury during the course of a trial that places him or her in a far better position than an appellate court to measure what a given situation requires. Moreover, the demands of the trial process are such that the trial judge necessarily must be given considerable latitude. For these reasons, we accord great deference to the trial judge's wide discretion in using voir dire to determine the presence or absence of prejudice. *United States v. De Peri,* 778 F.2d 963, 971 (3d Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986); *United States v. Jackson,* 649 F.2d 967, 975–76 (3d Cir.), *cert. denied,* 454 U.S. 1034, 102 S.Ct. 574, 70 L.Ed.2d 479 (1981); *United States v. Armocida,* 515 F.2d 29, 49 (3d Cir.), *cert. denied,* 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975).

■ We decline to hold that the district court's initial resort to in banc questioning was an abuse of discretion. As we indicate hereafter, we believe the problem in this case is that the information solicited by the trial judge was insufficient to permit him to fulfill his responsibilities. It was within the broad discretion accorded him, however, to solicit the information which he did solicit by questioning the jury in banc. We, of course, do not know what procedure the trial judge would have adopted if he

had decided to inquire more specifically regarding the information received and any prejudicial effect upon the members of the jury. We are not prepared to rule out the possibility that the in banc, voir dire process could have been adapted to elicit the necessary information in a satisfactory manner and, therefore, we decline Dowling's invitation to hold that individual questioning was required in the circumstances of this case.

### III.

Dowling further urges this court to hold that the district court committed reversible error in failing (1) to ascertain what information, if any, the jurors received, and, (2) if they were exposed to extra-record information, to make a finding as to whether the jurors could be counted on to ignore that information. Dowling argues that, although the trial court asked the jurors whether they had received any extra-record information that they believed they were unable to disregard, the judge's failure to learn what they had heard deprived him of any informed basis for evaluating their tacit responses. The government, however, asserts that the jurors' negative responses to the judge's questions, combined with his contemporaneous instruction to render a verdict based solely on the evidence presented in court, ensured a lack of prejudice to the defendant. In addition, the government asserts that the issue Dowling seeks to raise was not preserved at trial and does not involve "plain error" within the meaning of Fed.R.Crim.P. 52.

■ A criminal defendant is entitled to a determination of his or her guilt by an unbiased jury based solely upon evidence properly admitted against him or her in court. *Irvin v. Dowd*, 366 U.S. 717, 722–23, 81 S.Ct. 1639, 1642–43, 6 L.Ed.2d 751 (1961); *Martin v. Warden, Huntingdon State Correctional Institution*, 653 F.2d 799, 806 (3d Cir.1981), *cert. denied*, 454 U.S. 1151, 102 S.Ct. 1019, 71 L.Ed.2d 306 (1982). Where there is affirmative reason to believe that a member or members of the jury may have learned extra-record information about the underlying facts of the case or irrelevant prior conduct of the defendant that has a potential for adversely affecting the jury's ability to impartially decide the case on the record evidence alone, the trial court has a duty to determine whether the trial should be aborted or whether the jury, with proper instructions, can be relied upon to judge impartially and to confine its deliberations to the record evidence. *E.g., Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982); *Rosales-Lopez v. United States*, 451 U.S. at 188, 101 S.Ct. at 1634; *United States ex rel. Greene v. New Jersey*, 519 F.2d 1356, 1357 (3d Cir.1975).

Whether a cautionary instruction to disregard extra-record information will suffice to protect the defendant's right to an impartial determination based upon record evidence depends upon the likelihood of substantial prejudice resulting from the jury's exposure to the extra-record evidence. *United States v. D'Andrea*, 495 F.2d at 1172–73. The likelihood of substantial prejudice turns on all of the surrounding circumstances, the most important being the nature of the information learned by the jurors and the manner in which it was conveyed. *E.g., id.; United States v. Armocida*, 515 F.2d at 49; *United States ex rel. Doggett v. Yeager*, 472 F.2d at 239.

Information about prior criminal convictions or activities is the kind of information that carries great potential for prejudicing the jury. *E.g., United States v. Marshall*, 360 U.S. 310, 312–13, 79 S.Ct. 1171, 1172–73, 3 L.Ed.2d 1250 (1959) (jurors' knowledge of defendant's prior conviction required new trial despite jurors' assertions of impartiality); *United States v. Gray*, 468 F.2d 257, 260 (3d Cir.1972) (in banc) (jury's knowledge of defendant's prior criminal conduct required new trial despite cautionary instruction); *United States v. Carney*, 461 F.2d 465, 468 (3d Cir.1972) (witness's allegation of attempted murder by defendant required new trial despite cautionary instruction). Under some circumstances, however, the jury's improper receipt of such information can be cured by a cautionary instruction. *E.g., United States v. De Larosa*, 450 F.2d 1057, 1062–

63 (3d Cir.1971) (jury's knowledge of defendant's prior imprisonment does not require new trial where "the prejudicial nature of the evidence is relatively mild and the manner of its presentation undramatic"), *cert. denied,* 405 U.S. 957, 92 S.Ct. 1188, 1189, 31 L.Ed.2d 235, 236 (1972).

■ Extra-record information about the case may also prejudice the jury. *E.g., United States ex rel. Greene v. New Jersey,* 519 F.2d at 1356–57 (jurors' possible knowledge of defendant's attempted non vult plea required new trial where trial court did not ascertain whether jurors had learned of plea and, if so, could render fair verdict); *United States ex rel. Doggett v. Yeager,* 472 F.2d at 239 (jurors' possible knowledge of defendant's prior guilty plea and escape attempt required new trial). On the other hand, not every exposure to extra-record information about the case will require a new trial. *E.g., United States v. De Larosa,* 450 F.2d at 1061–62 (jurors' knowledge that shots had been fired into home of government's chief witness did not require new trial where articles did not establish that defendants were responsible and exposed jurors claimed ability to deliberate impartially).

In every case where the trial court learns that a member or members of the jury may have received extra-record information with a potential for substantial prejudice, the trial court must determine whether the members of the jury have been prejudiced. *E.g., Smith v. Phillips,* 455 U.S. at 217, 102 S.Ct. at 946; *United States ex rel. Greene v. New Jersey,* 519 F.2d at 1357; *United States v. D'Andrea,* 495 F.2d at 1172–73 n. 5. *Compare United States v. Armocida,* 515 F.2d at 49 (although "better practice" would have been to voir dire the jury, failure to do so does not require reversal where articles could not have caused substantial prejudice). We have recognized that "voir dire is the appropriate method for inquiry into possible prejudice or bias

on the part of ... jurors, and the procedures used must provide a reasonable assurance for the discovery of prejudice." *Martin v. Warden, Huntingdon State Correctional Institution,* 653 F.2d at 807; *accord, e.g., Rosales-Lopez v. United States,* 451 U.S. at 188, 101 S.Ct. at 1634; *United States v. Salamone,* 800 F.2d 1216, 1226 (3d Cir.1986).

■ The determination of bias or impartiality must be made by the trial court. *E.g., United States v. Gerald,* 624 F.2d 1291, 1296–97 (5th Cir.1980), *cert. denied,* 450 U.S. 920, 101 S.Ct. 1369, 67 L.Ed.2d 348 (1981). As we recently stated in *Holland v. Attorney General of New Jersey,* 777 F.2d 150 (3d Cir.1985):

> Although a finding of juror bias or absence of bias is often framed in terms of whether a juror will be able to set aside his or her own opinion and render a verdict based on the evidence, in effect a trial court's determination on the bias of a juror is a determination based on the juror's present state of mind. As the [Supreme] Court stated in *Wainwright v. Witt,* "whether a venireman is biased has traditionally been determined through *voir dire* culminating in a finding by the trial judge concerning the venireman's state of mind." [469 U.S. 412] 105 S.Ct. [844] at 854 [83 L.Ed.2d 841].

*Id.* at 155. The trial court's finding is a finding of "historical fact: did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." *Patton v. Yount,* 467 U.S. 1025, 1036, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847 (1984).

■ In deciding whether a juror's protestation of impartiality should be believed, it is important for the trial court to know what extra-record information was conveyed and the manner of its conveyance.[2]

**2.** By stressing the importance of determining what information members of the jury have received and how they received it, we do not suggest that the failure to make such determinations is always reversible error. In *United States v. Addonizio,* 451 F.2d 49 (3d Cir.1971),

*cert. denied,* 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812 (1972), we upheld the trial court's decision not to solicit from each prospective juror the content of each of the newspaper articles to which he or she had been exposed. In that case, the trial court familiarized itself with

For this reason, we have stressed the need for the trial court to determine on the record precisely what happened. In *United States ex rel. Greene v. New Jersey*, 519 F.2d 1356 (3d Cir.1975), we were confronted with a procedural situation similar to the one now before us. During trial in that case, two newspapers revealed the defendant's attempted non vult plea. The state court failed to determine whether any members of the jury had read the article or heard of the information contained therein. Instead, like the district court in this case, the trial judge, jumping to the ultimate issue, "assum[ed] that some of or all of [the] jurors did in fact read the article" and made a factual determination that the information "would not affect their deliberations." *Id.* at 1356–57.

We held that this finding could not be sustained without a firmer record foundation, observing as follows:

> In light of the widespread dissemination of prejudicial information, at the very least, the state court should have conducted an immediate *voir dire* inquiry to determine if the jurors had read the offensive articles and, if they had, whether they could nonetheless render a fair and true verdict. . . .
>
> Because the trial court did not conduct a *voir dire*, and because we cannot speculate what the jurors' responses would

have been to an appropriate inquiry, we conclude that the appellee must be afforded a new trial.

*Id.* at 1357; *see also United States v. Davis*, 583 F.2d 190, 196–98 (5th Cir.1978) (insufficient voir dire where trial court asked only that any jury panel member "raise his hand if he felt the publicity impaired his ability to render an impartial decision"). Similarly, in this case, "we cannot speculate what the jurors' responses would have been to an *appropriate* inquiry."

■ As a result of Delgado's note and her responses to his questioning, the trial judge in this case was faced with a strong probability that the jury had been exposed to extra-record information with the potential for substantial prejudice. The information available to the trial judge strongly suggested: (1) that members of the jury had received extra-record information concerning both the case and prior criminal conduct of the defendant; (2) that the defendant's prior criminal conduct, both that of which he was accused and that for which he was convicted, was extremely serious and involved violence; (3) that the extra-record information probably received revealed that Dowling had been convicted of a crime similar to the one for which he was being tried; and (4) that the information was conveyed to the jury by someone who

the pretrial publicity, which had been "neither virulent nor inflammatory," *id.* at 66, and engaged in extensive voir dire, questioning individually each prospective juror who indicated that he or she knew something about the case. This individualized voir dire included questions regarding the juror's attitude towards the case, the particular newspapers in which he or she had seen case-related articles, and whether he or she had read entire articles or merely skimmed them. *Id.* at 65. Further, the trial court excused each prospective juror who had discussed the case in any way and each who indicated "extensive exposure to pretrial publicity, *without regard* to protestations of impartiality." *Id.* at 67. We affirmed because we concluded that "the trial court ... carefully and painstakingly assured itself that the jurors selected were impartial and unbiased by any exposure to the publicity or other influences." *Id.* at 66.

Nonetheless, making reference to the American Bar Association's Standards Relating to Fair Trial and Free Press, § 3.4(a) at 67, we added:

[W]e recommend that in cases hereafter in which there is, in the opinion of the court

> a significant possibility that individual talesmen will be ineligible to serve because of exposure to potentially prejudicial material, the examination of each juror with respect to his exposure shall take place outside the presence of other chosen and prospective jurors. * * * *The questioning shall be conducted for the purpose of determining what the prospective juror has read and heard about the case and how his exposure has affected his attitude towards the trial.* * * *

451 F.2d at 66 (emphasis added).

In the case now before us, despite the fact that the members of the jury probably did hear inflammatory information, the trial court neither made the inquiries and determinations we recommended in *Addonizio* nor adopted an alternative approach reasonably calculated to provide similar assurance that the defendant would not be prejudiced.

was described by an eyewitness as "prejudiced" against the defendant.

Despite these circumstances, the trial court adopted a procedure which effectively transferred to the jury the responsibility of determining its own impartiality. By asking the jurors to identify themselves if they had received extra-record information "which you consider has rendered you incapable of giving a fair trial to either side in this case," the trial judge delegated to each juror his duty to determine whether prejudice to the defendant was likely to result. Further, by failing to ascertain whether the jury had been exposed to extra-record information and the nature of that information, if any, the trial judge was in no position to evaluate the credibility of the jurors' tacit protestations of impartiality. In the context of a case in which the potential for prejudice was as great as it was here, this delegation constituted reversible error.

We hold that the trial judge erred when he failed to develop a record sufficient to permit evaluation of the potential prejudice to the defendant and failed to make a finding regarding the jurors' ability to perform their assigned task which took into account whatever information they had received.

### IV.

■ Although defense counsel did not specifically request that the trial judge inquire of the jury in banc whether any one of them had received outside information about the case or the defendant, we conclude that he did enough to preserve the defendant's right to appellate review on this error. When defense counsel was informed of the Delgado note, he addressed the court as follows:

I am concerned that Miss Diane Delgado, alternate number 1, suggested that the jury has been tampered by the revelations of Carmencita Richardson and I think in all due caution there should be an independent in camera examination of each juror to see to the extent of taint that Carmencita Richardson has influenced each juror with respect to her knowledge of my client's prior conviction

and her knowledge of the case. It's clear that that has happened. The question is notwithstanding whether they can perform their duties pursuant to their oath....

Appendix to Appellant's Br. at 15.

We believe this statement, together with the motion for a mistrial after the court completed its questioning of the jury, adequately communicated to the trial judge the defendant's position both (1) that the trial should not go forward absent an inquiry into "the extent of the taint," and (2) that the only effective way to conduct that inquiry was through individual, *in camera* examination. In context, we conclude that the request for an inquiry into "the extent of the taint" should have been understood by the district judge as a request that he, at a minimum, find out what, if anything, the jurors had heard and reach an informed conclusion as to their ability to follow their oath. Accordingly, we find that a contemporary objection was made and we do not reach the issue of whether plain error occurred.

### V.

The judgment of the district court will be reversed and the case will be remanded for a new trial.

ROSENN, Circuit Judge, concurring and dissenting.

Although I agree with parts I and II of the majority opinion to the extent those sections conclude that the defendant was not entitled to an individual *in camera* interrogation of each of the jurors, I cannot agree with the court's conclusion in part III that the defendant is nevertheless entitled to yet a third new trial. Accordingly, I respectively set forth my reasons for dissenting.

On April 2, 1985, after a prior trial had resulted in a hung jury, Reuben Dowling was convicted on each of nine counts relating to an armed bank robbery. The court sentenced Dowling to a total of 75 years, at least ten of which must be served without

parole, probation, suspension, or reduction by good behavior.

At the beginning of the second day of Dowling's three day trial, defense counsel informed the trial court that a local newspaper, the St. Croix Avis, contained an article about the trial that revealed a number of unsavory facts about the defendant. Accordingly, at both the beginning and end of the second day of this second trial the court admonished the jury to disregard news media accounts, and in the morning asked the panel whether any of them had read the offending article. None of the jurors responded that they had.

At the beginning of the third day of trial, after all of the evidence had been presented to the jury, but prior to closing arguments, the court informed counsel of the note it received from alternate juror Diane Delgado, which is quoted in the majority opinion. Maj. op. at 136. Thereupon the parties agreed to excuse Carmencita Richardson, the juror identified in Delgado's note as having "listened to the news and read the newspaper," as well as having known something about the case before trial.

After dismissing Richardson, the court undertook an individual interrogation of Delgado at sidebar, which included a colloquy with counsel:

> THE COURT: Miss Delgado, I've received a note from you which I've brought to the attention of the gentlemen.
>
> The first question I have for you is you have alternate number 1 who would ordinarily step into the seat of juror number

8. Yet you indicated that you heard a juror that's been excused make certain statements. Do you believe that you can still be fair to all the parties and render a verdict based solely on the evidence.

THE JUROR: Yes, I do.

THE COURT: Have you received any information that has caused you to develop any opinion other than from the evidence how this case should be decided?

THE JUROR: No, Your Honor.

THE COURT: Are you satisfied, Mr. Reich?

MR. REICH: We are satisfied.

THE COURT: Are you satisfied, Mr. Chamble?

MR. CHAMBLE: Yes, Your Honor.

THE COURT: The second question has to do with your own letter. Miss Richardson has been excused. The question is whether or not you have witnessed Miss Richardson supply to other jurors any information which would tend to prejudice any other juror?

THE JUROR: In that case I am not too sure. She had mentioned that in front of all of the jurors and they were very uncomfortable about the situation so—

THE COURT: Then I'm going to make a general inquiry of the jurors.

Tr. at 323–24. The court thereupon made a lengthy *in banc* inquiry of the jurors designed to elicit a response from any juror who might have been prejudiced, and upon receiving no response followed the inquiry with an offer to discuss the matter privately at sidebar.[1] The court specifically stated

---

1. The court instructed the jury, in relevant part, as follows:

   THE COURT: ... I want to make sure I understand and that the attorneys understand that none of you have come upon any information which has been received outside of the evidence in this case which would cause you to have developed any feelings one way or the other about the case. Have any of you received any information in this matter, that has not been part of the evidence in the case which you consider has rendered you incapable of giving a fair trial to either side in this case. If so, would you raise your cards. The important thing about this case, ladies and gentlemen, is that this matter must be decided only on the basis of the evidence that is

   presented to you and the instructions of the Court.

   It cannot be decided on the basis of anything outside of this courtroom or anything that you heard, any rumors, any thing of any kind....

   Are there any of you who at this point who are unable to meet your commitment in that respect by not raising your card. The attorneys are going to take it then that each of you, if you remain as jurors in this case would decide the case solely on the basis of the evidence that has been received in the case. Are any of you in any position where you do not feel that you cannot do that?

   [No response.]

   \*   \*   \*   \*   \*   \*

that it did not wish to belabor the point and thereby develop prejudice. *Id.* at 327.

Based on the above, it is apparent that defense counsel clearly consented to the court's decision to have Delgado, the juror who rang the bell on the danger of the Richardson taint, and who obviously was most sensitive to and aware of Richardson's statements, replace Richardson. Delgado's letter and subsequent responses to questioning indicate that others had the same exposure. Therefore, (1) if Delgado was acceptable as an untainted juror; (2) if the trial judge specifically inquired of the other jurors whether they could serve impartially, and gave them the opportunity to discuss the matter privately with him; and (3) if, as the majority concedes, individual interrogation was not required; then how can there be any justifiable complaint now that the other jurors were impermissibly tainted? Yet, the majority nevertheless concludes that despite warnings to disregard news media accounts twice given the jurors the day before, defense counsel's satisfaction with Delgado, the district court's finding that belaboring the point might actually create prejudice, and the district court's lengthy *in banc* examination and offer to discuss the matter privately, error occurred at this very late stage in the proceedings which justifies a third trial. I do not agree.

As the majority correctly notes, in *United States v. Addonizio*, 451 F.2d 49, 65–67 (3d Cir.1971), in which the exposure was to actual news accounts, and not, as here, to a tainted juror, this court *rejected*, on the facts, a claim that the trial judge erred in failing to solicit from prospective jurors the content of each of the newspaper articles to which he or she had been exposed. The court recommended, however, that in the future such questioning should be conducted wherever there exists a significant possibility of exposure to potentially prejudicial material. Maj. op. at 136, n. 1. *Addonizio*, however, involved the jury

selection procedure provided for in Fed.R. Crim.P. 24(a), where the focus and thrust are to avoid *potential* prejudice. The instant case, by contrast, involves a motion made pursuant to Fed.R.Crim.P. 47 after the case had virtually concluded and was about to go to the jury, and the focus was therefore on *actual* prejudice.

In *United States v. D'Andrea*, 495 F.2d 1170, 1173 n. 8 (3d Cir.), *cert. denied*, 368 U.S. 855, 95 S.Ct. 101, 42 L.Ed.2d 88 (1974), again in contrast to the report on an article read by an excused juror, a juror and an alternate juror actually read a newspaper article about the defendant during the course of a criminal trial. In upholding the district court's decision to question the jury *in banc* rather than individually, the court distinguished *United States ex rel. Doggett v. Yeager*, 472 F.2d 229 (3d Cir.1973), relied upon heavily by the majority, because in *D'Andrea* only one rather than several articles were involved, the taint came late in the trial, the district court specifically found that extensive individual interrogation was likely to cause more harm than good, and the defense never sought individual interrogation of the jurors. *Id.* at 1172–73, 1173 n. 8.

As this court observed in *D'Andrea*, the crucial question is the degree of prejudice created by the improper publicity "since a new trial is required only when substantial prejudice has occurred." *Id.* at 1172 (footnote omitted). Unlike *D'Andrea*, the jurors who sat in this case did not read the newspaper article, but only heard a statement concerning it from Richardson. The statement they heard was no more than Delgado had heard. The court and counsel for the defendant believed that Delgado, the most directly affected juror, could serve without being prejudiced and the judge's interrogation adequately demonstrated that the others could do so as well. Nothing in the judge's interrogation of Delgado, which satisfied defense counsel, indicated that Richardson's statement was so

THE COURT: Ladies and gentlemen of the jury, I have asked a series of questions. Are there any of you who would care to talk to the Court and the attorneys privately about this matter at side bar.

[No response.]

Tr. at 324–26, 327.

fundamentally prejudicial that actual prejudice could be presumed as a matter of law. *See id.* at 1172 n. 5. Further, as in *D'Andrea,* the trial court feared that further interrogation would "only emphasize the incident and that ultimately it was likely to do more harm than good." *Id.* at 1173 n. 8.

Therefore, the trial judge made a sufficient inquiry into the jurors' ability to serve impartially and the defendant has not shown any prejudice to him. Accordingly, I perceive no error on the part of the trial court and would affirm the judgment.