**UNITED STATES of America**

v.

**Corey KEMP, et al.**

**Nos. CRIM.A. 04–370–02, CRIM.A. 04–370–03, CRIM.A. 04–370–04, CRIM.A. 04–370–05, CRIM.A. 04–370–06.**

United States District Court,
E.D. Pennsylvania.

April 21, 2005.

Christopher D. Warren, Feldman and Pinto, Philadelphia, PA, Edwin J. Jacobs, Jr., Atlantic City, NJ, for P.C. Ronald A. White.

Christopher G. Furlong, Media, PA, Lloyd G. Parry, William R. Spade, Jr., Davis, Parry, Tyler & Wright, Philadelphia, PA, Michael J. Mc Govern, Monteverde, McAlee, Fitzpatrick, Tanker & Hurd, Philadelphia, PA, for Corey Kemp.

Kevin H. Marino, Marino & Associates, P.C., Newark, NJ, for Glenn K. Holck.

Lawrence S. Lustberg, Crummy, Del Deo, Dolan, Griffinger and Vecchione, Newark, NJ, for Stephen M. Umbrell.

Anthony T. Chambers, Detroit, MI, Lewis Myers, Jr., Chicago, IL, Scott Godshall, List & List, Philadelphia, PA, Nathaniel E. Jones, Jr., Baltimore, MD, for Lavan Hawkins.

Nino V. Tinari, Philadelphia, PA, for Janice Renee Knight.

Catherine M. Recker, Lisa A. Mathewson, Welsh & Recker, P.C., Philadelphia, PA, for Charles Lecroy.

Thomas H. Suddath, Jr., Lathrop B. Nelson, III, Montgomery McCracken Walker and Rhoads, L.L.P., Philadelphia, PA, for Anthony C. Snell.

William A. Destefano, Terri A. Pawelski, Saul Ewing, LLP, Philadelphia, PA, for Denis Carlson.

Jeffrey M. Lindy, Philadelphia, PA, Joel Harvey Slomsky, Philadelphia, PA, for Francis D. Mc Cracken.

Joseph P. Grimes, Philadelphia, PA, for Rhonda M. Anderson.

Michael A. Schwartz, Richard J. Zack, Robert A. Zauzmer, Catherine Votaw, Joseph F. Minni, William B. Carr, Jr., Joan L. Markman, Philadelphia, PA, for United States of America.

## MEMORANDUM RE TRIAL ORDER NO. 20

BAYLSON, District Judge.

This Memorandum is being prepared in light of the appeal of Philadelphia Newspapers, Inc. ("PNI") filed on April 19, 2005, from an Order of this Court denying PNI's motion for access to juror notes and the transcript of proceedings concerning those notes.

### I. Background

This case is a complex criminal matter in which there were originally twelve defendants. The indictment charged several defendants with conspiracy to commit honest services fraud and other defendants with various other substantive crimes. Of the original twelve defendants, one (Ronald A. White) is deceased, five pleaded guilty, one was acquitted in a separate trial, and five are on trial as this Memorandum is prepared. Jury selection took place on February 14–15, 2005, and testimony began on February 22, 2005. After more than seven weeks of testimony, the jury began its deliberations on April 13, 2005 and they are continuing. The jury has ninety (90) separate verdicts to consider.

PNI was granted leave to intervene by Pretrial Order No. 5, dated September 22, 2004. In a Memorandum of the same date, this Court supported PNI's position by denying the government's motion for a protective order restricting defense counsel from disclosing discovery materials. See U.S. v. White, 2004 WL 2399731 (E.D.Pa. Sept.22, 2004). Subsequently, by Order dated January 21, 2005, and Memorandum dated the same date, this Court denied PNI's motion for immediate unsealing of exhibits to a pretrial motion filed by two defendants, pending completion of the trial of the one defendant who was acquitted, and a decision on the pending pretrial motion (Doc. No. 369). In a 31 page (apparently unreported) Memorandum, the Court reviewed the law on First Amendment media rights, and the common law right of public access, which largely concerned the pretrial release of Title III materials, and that discussion will not be repeated in this Memorandum. Subsequently, by Order dated February 10, 2005 (Doc. No. 438) and pursuant to a Memorandum of the same date, U.S. v. Kemp, 2005 WL 352700 (E.D.Pa. Feb.10, 2005), this Court ordered that restrictions on the release of Title III materials would be lifted as of February 16, 2005, the date on which the government was ordered to file its pretrial exhibits.

The Court also notes, as background, that there has been extensive media coverage of this case. The proceedings, both in the pretrial matters and at trial, have received virtually daily media coverage in newspaper, radio and television. The charges in the indictment make serious allegations of public corruption at high levels within the City of Philadelphia's government.

## II. *Notes from Jurors and Findings*

On Wednesday, April 13, 2005, the Court received a request from the jury for further instructions on money laundering. The Court gave the additional instructions as requested. On Monday, April 18, 2005, the Court received two notes, both dated at 1:15 p.m. These notes have been sealed and the originals are in the same envelope as the sealed portion of this Memorandum. No copies of these notes have been made.

The first note was from the Foreman and it was attached to another note from another juror. The Foreman's note in part requested additional instructions on three points: intent, reasonable doubt and conspiracy. The Foreman's note further indicated that reading the jury instructions, which the Court had given the jury in typewritten form, is "confusing rather than clarifying issues for the jurors. We need an 'off the record' layman term explanation or we are going to be spinning our wheels." In response to these notes, which were reviewed with counsel *in camera*, the Court decided to give the jury further instructions on intent, reasonable

doubt and conspiracy, and proceeded to do so on the afternoon of April 18, 2005.

At that time, following instructions, counsel for PNI appeared, having been invited to come to the courthouse in view of the fact that members of the media had made it known to the Court's Deputy Clerk their objection to not receiving the actual juror notes. At that time, the Court denied a request from PNI's counsel that the Court release the juror notes.[1]

On the morning of April 19, 2005, the Court received two additional notes from jurors, both dated at 10:35 a.m.

PNI's counsel appeared at the Court and restated his position that the Court was under an obligation to release the juror notes and the transcripts of any proceedings relating to such notes. The Court declined to do so.

The Court issued a two-page Memorandum and Order at the close of business on April 19, 2005, reviewing in general terms that the juror notes concerned the conduct of their deliberations, had nothing to do with the guilt or innocence of any defendant, and that the jury had not indicated any problem with continuing deliberations.

The undersigned made specific findings that the deliberative process of the jury was assisted by conducting these proceedings *in camera*, that applying the test of "logic and experience," jury deliberations in the case would be inhibited and possibly adversely impacted if the discussions with counsel and/or jurors were conducted in open court or if the transcripts were un-

---

1. After reviewing the case law, the Court realizes that there is Third Circuit precedent suggesting that a trial court should, prior to closing any proceedings, make appropriate findings. Candidly, the undersigned was not aware that such findings needed to be made before the closure order was entered, but upon reviewing the cases, the undersigned issued a two-page Order on the afternoon of April 19, 2005 which made initial findings supporting the closure. Upon further consideration, additional findings are being made in this Memorandum. The Court notes that when PNI's counsel appeared on April 18, 2005, he did not have any specific authorities, but presented additional authorities on April 19, 2005, which the Court has carefully considered before issuing this Memorandum.

sealed. The undersigned further found that making these matters public would likely inhibit further jury questions. The undersigned likened the proceedings concerning the jurors' notes to be an extension of jury deliberations which are, of course, held in secret. The Court also noted that PNI had not then, and has still not, presented any case precedent supporting its position that proceedings such as those which have taken place in this case are subject to the public right of access.

This Court concludes that the decision not to release the juror notes to the media, and to maintain the transcripts of the proceedings with counsel and also the individual voir dire with the jurors, as sealed, was sound, inasmuch as the jury is continuing to deliberate. The Court believes that releasing this information to the public could have an adverse effect on continued deliberations and the ability of this jury to reach a verdict.

### III. No Common Law Right of Access Exists to these Proceedings

This Court has summarized in its prior opinions noted above the common law right of access on which PNI relies. This Court has been supportive of the media's right of access to proceedings on this case, as reviewed in the prior Memoranda referenced above. In ruling in favor of Intervenor PNI on several occasions, the Court has. rejected the arguments of both the government and defendants seeking to restrict public access to information about this case.

■ However, this Court concludes that the case law of the Third Circuit and other circuits authorized this Court to not release the notes, at least while the jury continues its deliberations. See *Government of the Virgin Islands v. Dowling*, 814 F.2d 134 (3d Cir.1987) (expressing the preference for individual, *in camera* questioning of possibly-tainted juror and .reiterating trial judge's wide discretion); *see also United States v. Gurney*, 558 F.2d 1202, 1210 (5th Cir.1977)(concluding that the press had no right of access to written communications between the judge and jury during deliberations); *United States v. Edwards*, 823 F.2d 111 (5th Cir.1987) (affirming the actions of the trial court and holding that for First Amendment purposes, no presumption of openness attached to the district court's midtrial questioning of the jurors because there was an interest in preserving the jury as an impartial, functioning, deliberative body); *In re Globe Newspaper·Co.*, 920 F.2d 88, 94 (1st Cir.1990) ("It is undisputed that the secrecy of jury deliberations fosters free, open and candid debate in reaching a decision.").

This Court finds *U.S. v. Edwards*, 823 F.2d 111 (5th Cir.1987), particularly instructive. In *Edwards*, the trial court was alerted that the jury had been exposed to some extra-record· information. The district court questioned the jurors in chambers, did not excuse the jurors, ordered the record sealed, and prohibited public comments about the issue. On appeal, the Fifth Circuit affirmed the actions of the trial court and highlighted the problems with conducting individualized voir dire in open court:

> The potentially divisive effects on relationships between jurors would be exacerbated by a "public hearing." If involved jurors are retained, the reservoir of goodwill between jurors, so important to reaching group consensus, is drained, thus increasing the potential that deliberations will end with a hung jury ...
>
> If the questioning of impaneled jurors were held in open court, there is a substantial probability that what may have begun as a "tempest in a teapot" will end in a mistrial, a hung jury, or a

reversal on appeal. The interest in preserving the jury as an impartial, functioning, deliberative body is not only a higher value than that served by openness here, it is a *sine qua non* of our system of criminal justice as envisioned in the sixth and seventh amendments. Thus, for first amendment purposes, no presumption of openness attaches to proceedings involving the midtrial questioning of jurors. It follows that the trial judge did not err in failing to provide a preclosure hearing.

*Edwards*, 823 F.2d at 116–117.

With regard to importance of not intruding upon jury deliberations, the Supreme Court has also stated:

> Freedom of debate might be stifled and independence of thought checked if jurors were made to feel that their arguments and ballots were to be freely published to the world ... No doubt the need is weighty that conduct in the jury room shall be untrammeled by the fear of embarrassing publicity.

*Clark v. United States*, 289 U.S. 1, 13, 53 S.Ct. 465, 77 L.Ed. 993 (1933) (sustaining a judgment affirming petitioner's conviction).

The case law clearly holds that the right of public access, even assuming it applies to the present *in camera* proceedings, is not absolute, as this Court concluded in the prior Memoranda.

There is no more tender time in the entire trial than jury deliberations. PNI does not challenge the right of courts to require that jury deliberations be held in confidence and behind closed doors. Just as appellate judges and Supreme Court Justices deliberate in private, so do trial jurors. When the deliberative process appeared threatened, as the undersigned perceived it was threatened in this case on the morning of April 19, 2005, after consultation with all counsel, the Court elected to conduct an individual voir dire of the jurors.

The Court does not believe that making these matters public while the jury is deliberating serves any useful purpose concerning the administration of justice. Just as there is no right of access to the jury's deliberations while they are deliberating, the Court believes that there is no right of access to problems which the jurors perceived were preventing them from deliberating as per their sworn duty. The issues discussed in the juror notes created serious cause for concern by the Court, but revealing the underlying facts to the public would have hindered, rather than improved, the situation. The Court found as a fact that releasing this matter would inhibit the jury deliberations continuing and would also inhibit further questions the jurors might want to ask.

The Court has no reason to believe that any juror is violating the Court's instructions not to read or to listen to any extra-record matter concerning the case. However, on many days, this case is a prominent page-one, "above the fold" headline or is the lead story on local radio and television. Once the sealed information is released, this Court has no control over how the media reports it. It is possible that some juror, however inadvertently and unwillingly, will come into contact with some of the publicity, either personally or vicariously. If such a "screaming headline" were to face a juror as the juror walked or drove by a corner newspaper vending machine, or came off of a train or subway, and it divulged one or more of the comments that the jurors had made in the notes or to the Court *in camera*, and which the jurors had reason to believe would remain confidential, this could have a disastrous effect, and possibly a terminating effect, on the jury deliberations,

and could be prejudicial to the right of defendants to a fair trial.

PNI relies heavily on *United States v. Antar*, 38 F.3d 1348 (3d Cir.1994) in support of its position that there is a public right of access to the proceedings under discussion. However, *Antar* involved the sealing of juror identifying information in a pretrial context, whereas this case involves juror notes concerning the conduct of the jury deliberations and their impact on the deliberative process. Thus, *Antar* is distinguishable on its facts, as is *Simone*, the case on which PNI principally relies for its assertion of a right of public access. Despite PNI's heavy reliance on *Antar* and *Simone*, these cases do not provide a rule of decision for this case. Notwithstanding the rhetoric of PNI's counsel, there is no case precedent supporting PNI's legal argument for a right of public access to the Court's communications with counsel and the jury on the conduct of deliberations, particularly as reflected in the facts of this case, detailed in the sealed portion of this supplement Memorandum.

The most obvious and critical distinction is that neither *Antar* nor *Simone* involve the most sensitive aspect of a criminal trial—the jury's deliberations. Assuming there is no right of public access, this Court acted properly in denying PNI's request for copies of the juror notes and access to the discussions with counsel and/or the transcript thereof.

The Court also notes that there is a well recognized privilege in civil cases for the deliberative process, thus protecting it from discovery. *See Department of the Interior v. Klamath Water Users Protective Association*, 532 U.S. 1, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001) and *Redland Soccer Club, Inc. v. Department of the Army*, 55 F.3d 827 (3d Cir.1995). The Court finds that this privilege is further

grounds for supporting the Court's decision to hold the jurors' notes confidential, as reflecting the jurors' deliberative privilege, and also to conduct the voir dire with individual jurors pursuant to a sealed transcript as a necessary adjunct to the deliberative process privilege.

IV. *Assuming Arguendo There Is a Right of Access to These Proceedings, the Court Has Discretion to Find, and Has Found, that the Right of Access Is Outweighed by Other Important Factors*

■ The Court concludes that the assumed right of public access to the juror notes is not so great that it should outweigh, threaten and overcome the interest that the parties and the public have in a fair trial and in this jury reaching a verdict, assuming it can and will do so by each juror following his or her oath. Tremendous delay and expense would encompass a new trial which might result because of the publicity, if one or more the jurors decides, because their private comments became public, not to deliberate any further or to deliberately disagree with other jurors so as to cause a mistrial.

Assuming arguendo that a right of public access exists, the dispute is not ended. The cases make clear that a right of access can be overcome provided the trial court makes specific findings showing a compelling necessity for closure which outweighs the right of access, and that this Court has adopted the least restrictive means of accomplishing the goal of balancing access with other compelling necessities.

■ The Third Circuit has required trial courts to make specific individualized findings regarding necessity and least restrictive means when restricting the right of access. "[A] court must carefully articulate specific and tangible, rather than

vague and indeterminate, threats to the values which the court finds override the right of access." *United States v. Antar*, 38 F.3d 1348, 1351 (3d Cir.1994). In *Antar*, the trial court sealed the transcript of the pre-trial voir dire proceedings as well as other portions of the public record containing juror identifying information. This was done *sua sponte*. The trial court did not hold a hearing on the matter and did not make any findings. *Id.* at 1352. The Third Circuit found that:

> there exists a presumptive right of access to voir dire proceedings. This right of access may not be abridged absent the satisfaction of substantive and procedural protections. On the substantive side, a court ordering closure must first establish that the competing interest asserted is not only "compelling," but also that it outweighs the First Amendment right of access. Second, it must determine that the limitations imposed are both necessary to and effective in protecting that interest. One part of establishing the necessity of a limitation is a consideration of alternative measures and a showing that the limitation adopted is the least restrictive means of accomplishing the goal. On the procedural side, these determinations must be covered by specific, individualized findings articulated on the record before closure is effected.

*Id.* at 1359 (internal citations omitted). The Third Circuit reversed the sealing of the transcripts because the trial court failed to satisfy its burden of placing findings on the record which clearly established that closure was necessary to protect an overriding interest and that it was the least restrictive means of accomplishing the goal. *Id.*

This case, like *Antar*, presents a "tension between two issues of critical constitutional concern: the need to protect the confidentiality of jurors' deliberations while, at the same time, guaranteeing the right of the press and the public to have access to court proceedings." *Id.* at 1350.

Guided by *Antar*, this Court has made findings in two separate categories. The first are those findings that do not necessitate revealing the notes from the jurors and the discussions with individual jurors as set forth below. The second set of findings are those that require discussion of the contents of the juror notes and the voir dire with the jury, which are set forth in the sealed portion of this Memorandum.

Initially, the Court notes that it may have been preferable for the Court to have set forth these reasons before, or at the same time, the Court denied the request for access by representatives of PNI. Third Circuit precedent suggests that these findings should be made before or at the time that proceedings are closed. Candidly, the undersigned was not aware of this requirement until researching the case law. But the delay was not prejudicial for two reasons.

First, the Court wanted, as it indicated to PNI counsel, to research the law and to receive authorities from PNI supporting its position. Although PNI made its position known on the afternoon of April 18, 2005, it did not have any case support at that time except the *Simone* case, which the Court believes is thoroughly distinguishable. The Court did not receive PNI's letter brief until midday on April 19, 2005. The Court reviewed the cases and issued its two-page Memorandum at approximately 4:00 p.m. on April 19, which made findings supporting the Court's position. However, a second factor is that the Court wanted the jury deliberations to proceed and that terminating the jury proceedings, or sending the jury home while the Court considered this issue, would have been an unwise expression of dissatis-

faction with the jury, or could have caused some jurors to lose interest in the deliberative process. Under all the circumstances, the Court concluded it should immediately review the juror notes with counsel *in camera*, and have the individual voir dire with members of the jury, also *in camera*, with defendants and defense counsel present. In this way, the deliberations would be only briefly interrupted and could then proceed. The Court believes that the wisdom of its proceeding in this fashion is justified as reflected in the note from the jury Foreman at 2:25 p.m. on April 20, 2005, which states: "Also, the meeting in your chambers has helped facilitate the deliberations."

The factors that the Court has relied upon for its decision to deny media access are as follows:

First, the Court believes that the jurors' issues, as expressed in the notes from the jurors, if made in a public forum, would have chilled continuing candid exchange among the jurors.

Second, the Court finds that having the jurors' notes and responses to the Court's questions made public would have chilled further questions. In this connection, the Court did receive three specific questions at 2:25 p.m. on April 20, 2005, to which the Court responded after hearing from counsel on the morning of April 21, 2005.

Third, as noted above, the Court believes that notwithstanding efforts of this Court and the individual jurors not to receive any information from outside sources, in a case of this nature where there is constant media coverage, this is a substantial risk, as to which the Court must take precautions, to prevent the jury from being exposed. If the jury was exposed to coverage of matters that take place in the courtroom, while undesirable, it may not be necessarily prejudicial. However, if the jurors' candid and confidential comments to the Court about the conduct of jury deliberations are themselves made public, the Court finds that there would be a substantial risk to effective continued deliberations among the jurors. Although PNI can downplay the risk of this occurring, this Court frankly disagrees and believes it is more important that the Court remain vigilant against the possibility of this happening. This requires that the contents of the jurors' notes and the discussions with counsel and the jurors on the topic of the conduct of the jury deliberations remain confidential.

Lastly, the Court notes the policy reasons as set forth below.

Considering the issue of least restrictive alternatives, the Court posits three different scenarios by which the Court could have dealt with these issues. First, as apparently desired by PNI, the Court could have read the jurors' notes in public and have had the voir dire with the individual jurors in the open courtroom. The Court considers this alternative as an invitation to a mistrial because the jurors would have likely solidified their positions and refused to deliberate. The contents of the jurors' notes are so sensitive that having them expressed in public could have prevented further candid discussions among the jurors.

The most restrictive alternative would have been for the Court to remove counsel and the defendants from the process. Under this scenario, the Court would not have read the jurors' notes to counsel and would have brought the individual jurors into chambers without the presence of counsel or the defendants. Whether or not the Court would have been justified in doing so is beside the point because the Court did not follow this alternative, but it was a possibility and would have been much more restrictive than what was done.

The middle ground, which the Court followed and which the Court believes was the least restrictive means of accomplishing the goal of the defendants receiving a fair trial, the jury continuing to deliberate, and the overall interest of justice being served, was to read the jurors' notes to counsel, hear argument from counsel as to what should happen, and to have the individual voir dire in the presence of counsel and all defendants.

PNI appears to argue that even if this scenario would be acceptable, nonetheless the Court is obliged to release immediately the jurors' notes to the public, as well as the transcripts. The Court finds for reasons set forth below that doing so would nonetheless pose a significant risk of interfering with the jury deliberations and possibly cause a termination of jury deliberations, which is against the public interest. PNI argues, without any basis in law or fact, that the Court has an obligation to do the latter. The Court finds a substantial risk that doing so would be intensely reported, that the coverage would reach the jurors, and that they would stop deliberating. This risk outweighs any right of public access. The Court believes that it can effectively serve the assumed right of public access by releasing the transcript after a verdict has been recorded and/or the jury is discharged—exactly what the Court told PNI's counsel it would do at the first hearing on the afternoon of April 18, 2005. The Court may make some minor redactions as to the names or numbers of individual jurors in order to preserve their privacy.

PNI also argues that its motion in this Court, and its appeal to the Third Circuit Court of Appeals, presents an "emergency" and that the right of access, which it assumes exists, will be effectively precluded if its motion is not granted, and the notes and transcripts are not immediately opened to the public. This Court regards this argument of PNI as bootstrapping because the assumed right of access does not necessarily mean immediate access. The Court's prior Opinion of January 21, 2005 illustrated many case precedents giving the trial court discretion over timing the release of information to the press and public.

The case law described in this Court's previous opinions indicate that the right of public access is not absolute, and that a trial court has some discretion to regulate the flow of information to the public as to matters that do not ordinarily take place in public view, such as jury deliberations. This is often expressed in the context of Title III materials, but it also applies to questions, comments and complaints from a jury about the conduct of jury deliberations. *See Dowling*, 814 F.2d 134 (reiterating trial judge's wide discretion); *see also United States v. Harrelson*, 713 F.2d 1114, 1117 (5th Cir.1983) (reconfirming that the trial judge is accorded broad discretion, "based on law and on his own and common experience," over aspects of the trial concerning the "handling of jurors," e.g. sequestration, juror access to information, and "harassment of jurors.").

The rule of law as advocated by PNI, that every juror note, and every inquiry by the Court into problems with jury deliberations, must be made public, serves no rational purpose. The objective of a trial is a search for the truth, and a verdict based on the evidence and the law. The jury in this case has been attentive. All of the jurors have taken notes from time to time, and many jurors frequently take notes. They have approached their deliberations with obvious seriousness of purpose. Additionally, in matters of scheduling, the jury has been extremely cohesive and easy to work with. One juror had a death in his immediate family and all ju-

rors were respectful of this juror's request that the Court adjourn for a day and a half for this juror's mourning, which was done. Spreading on the public record the details of a problem in the conduct of these deliberations would, in the undersigned's opinion, have harmed the deliberations. PNI's letter brief dated April 19, 2005 makes unwarranted assumptions that release of the notes and transcripts will have no affect on jury deliberations. With due respect to PNI's counsel, the undersigned believes that having presided over this trial for eight weeks, I am in a better position to assess the danger that would come from releasing the notes and transcripts. PNI's counsel has not attended the trial.

As a matter of policy, the rule PNI advocates is unwise. First, such a rule would discourage jurors from communicating with the Court about inter-personal problems which may be preventing deliberations from proceeding.

Second, such a rule would discourage citizens from wanting to serve on juries in high profile cases if they knew that every note and every communication with the judge would appear on the evening news, or in the next morning's newspaper, following which they might be subject to ridicule or criticism by their neighbors or relatives.

Third, if a trial judge determines, as did the undersigned, that the length, nature and complexity of a certain trial warrants that juror notes (dealing exclusively with the deliberative process) and the Court's inquiry into those notes, should remain confidential, such a rule would upset the traditional deference which appellate courts have afforded to such trial court decisions, particularly while the jury continues to deliberate, and would significantly lessen the ability of the trial judge to govern the conduct of the trial, and would give the media substantive rights that inhibit securing just verdicts.

In addition, although the Court has no reason to believe that there has been any attempt to contact a juror, if the juror notes were made public, and/or the transcript was made public, this might add incentive in a highly publicized case such as this, for some individual (with no present connection to this case but with the proverbial "axe to grind"), to attempt to contact and support a juror who appears to be disagreeing with other jurors, to promote jury dissension and a mistrial. The Court must be particularly sensitive to such matters in an alleged governmental corruption case with political overtones, as is the present case.

## IV. Conclusion

The undersigned believes that a trial court should have discretion to deal with these matters in the way they were handled in this case.

The "emergency" suggested by PNI's appeal arises out of PNI's absolutist view of the right of access to traditionally non-public communications between a judge and jury. The true "emergency" is, instead, to maintain the jury as a functioning body charged with deliberating in an effort to reach a verdict. The Court's primary obligation at the moment is to this jury. For the reasons stated above, the Court does not believe that PNI has established the right of public access to the proceedings which the Court held *in camera.*

Alternatively, if PNI had a right of access, then the Court has balanced that right with its supervision of the jury's deliberating process. Just as the Court balanced PNI's prior request for transcripts of Title III materials at an earlier point in this case, the Court has attempted to balance PNI's position with the equally, if not more important task of insuring that

the jury is not inhibited or dissuaded from continuing its deliberations in an effort to reach a verdict.

The Court believes that PNI's and the public's rights can be fully protected by the post-verdict release of the jurors' notes and transcripts. PNI downplays and minimizes the risks of jury contamination. I vigorously disagree and believe that the risks are substantial, and the granting of public access after the verdict satisfies the right of public access without any risk.