**UNITED STATES of America**

v.

**John SMALL, Appellant.**

**No. 88–1703.**

United States Court of Appeals,
Third Circuit.

Argued Sept. 5, 1989.

Decided Dec. 6, 1989.

Rehearing and Rehearing In Banc Denied Jan. 9, 1990.

Jack A. Meyerson (argued), Philadelphia, Pa., for appellant.

Michael M. Baylson, U.S. Atty., E.D. Pa., Joel M. Friedman, Atty. in Charge, Phila-

delphia Strike Force, Michael L. Levy (argued) and Barry Gross, Sp. Attys., Philadelphia, Pa., for appellee.

Before MANSMANN, NYGAARD and ALDISERT, Circuit Judges.

## OPINION OF THE COURT

NYGAARD, Circuit Judge.

John Small appeals from a judgment of sentence following his conviction on charges stemming from a scheme to manufacture methamphetamine. Following a jury trial, Small was convicted of one count of conspiracy to manufacture methamphetamine, one count of manufacturing methamphetamine, and one count of tax evasion. The primary issue is whether Small is entitled to a new trial after a transcript of trial testimony containing a prejudicial sidebar conference was mistakenly shown to the jury, without prior objection, during its deliberations. We conclude that the district court's finding of fact that the jurors did not see this prejudicial material was not clearly erroneous and therefore, utilizing a plain error standard, Small's conviction was not seriously affected by this mistake. Accordingly, we will affirm the judgment of the district court.

### I.

An indictment returned in June, 1987 charged Small and twenty-seven other individuals with a large-scale conspiracy to manufacture methamphetamine. The indictment alleged that Small was part of an organization led by John A. Renzulli which manufactured methamphetamine from 1983 to 1987. The Renzulli organization purchased large quantities of phenyl–2–propanone (P2P), an essential ingredient for the manufacture of methamphetamine, from an organization led by Angelo DiTullio and Steven Vento, Sr. The DiTullio/Vento organization purchased the P2P in Europe and smuggled it into the United States. In 1985, the entire process was taken over by the Philadelphia-based crime syndicate known as La Cosa Nostra

(LCN). In 1986 the LCN forced Vento and DiTullio out of the P2P importation business and brought the P2P in by itself. The LCN continued to do business with Renzulli by supplying him with P2P to manufacture methamphetamine.[1]

The government's evidence against Small came primarily from the testimony of Ralph Mita, a former member of the Renzulli manufacturing organization. Mita testified that Small was present at four methamphetamine "cooks" between November, 1984, and June, 1985. In addition, the government utilized recorded telephone conversations in which Small discussed with his daughter how much tin foil had been cut. This evidence corroborated Mita's testimony concerning the use of tin foil in the methamphetamine manufacturing process. A search of Small's house uncovered twenty-four containers of lye, another ingredient used in the manufacture of methamphetamine. Also found in the search was a shopping list for a large quantity of chemical glassware to be used in the "cooking" procedure. With regard to the tax evasion count, the government introduced an analysis from the Internal Revenue Service which revealed that in 1985 Small had spent $50,000 in cash, but reported less than $2000 as income for that year.

Following a jury trial, Small was found guilty of conspiracy, manufacturing methamphetamine, and tax evasion. On September 6, 1988, Small was sentenced to seven years imprisonment on the manufacturing count, and received lesser concurrent sentences on the conspiracy and tax counts. This timely appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

### II.

Small's primary contention is that the district court erred in denying his motion for a new trial based on the jury's exposure to a trial transcript containing a sidebar

---

1. The specific acts of the LCN in taking over the importation operation are set forth in *United*

*States v. Kelly,* 892 F.2d 255 (3d Cir.1989).

conference.[2] During its deliberations, the jury asked to see a portion of Mita's testimony. Small's attorney, Jack Meyerson, was not present at the time. David Shapiro, counsel for co-defendant Thomas Esposito, informed the court on behalf of Small that he had no objection to the request. Mr. Shapiro stated that he had Mr. Meyerson's "proxy" on the matter. About an hour later, it was brought to the court's attention that the transcript which had been sent out with the jury contained a sidebar conference pertaining to other charges pending against Small and members of his family.[3] As the district judge was not available at the time, counsel requested the judge's law clerk to retrieve the transcripts, which he did. The court was informed by Mr. Meyerson about the mistake, at which time Mr. Meyerson attempted to preserve the issue for review by stating that he was not "... waiving the right to seek a mistrial if the sidebars concerning [Small's] criminal acts were before the jury, whether it be through inadvertence." The transcripts of the Mita testimony, edited to delete the sidebar conference, were subsequently sent back to the jury.

Following the verdict, the district court conducted a voir dire with regard to the Mita transcript. Each juror was questioned whether he or she "... was aware that the transcript the Jury first received contained a transcript of the various sidebar conversations between ... the judge and the lawyers—that occurred during Mr. Mita's testimony." The jurors were shown a copy of the testimony and were asked if they had read the transcript of the sidebar conference. Eleven jurors answered that they did not read it or discuss it. One of the jurors, Number 11, stated that he had read the transcript of the sidebar conference and that the jurors had discussed it at length. The district court, in its post-trial memorandum, refused to grant a new trial. The court found that the issue was not properly preserved since no objection was made when the transcript was sent out with the jury. Dist.Ct. Op. at 6. The court also held that Small was not prejudiced by this mistake, since the jurors stated that they had not read or discussed the sidebar conference. The court did not find the statements of Juror Number 11 to be credible, concluding that Juror 11 "thought his verdict was being impeached or that he was being accused of not having considered something that he should have considered." Dist.Ct. Op. at 7.

### A.

Our initial task is to determine the proper standard of review. If we conclude, as did the district court, that Small did not properly preserve the issue for review, we must apply the plain error standard of Fed. R.Crim.P. 52(b).

Small claims that Mr. Shapiro was only authorized to deal with "questions of minimal importance." He claims that neither he nor his counsel agreed to allow the transcript into the jury room, which he argues is a "question of great importance." Thus, he concludes that he never had the opportunity to approve the decision to allow the jury to see the transcript.

In *Government of the Virgin Islands v. Joseph*, 685 F.2d 857 (3d Cir.1982), certain documents not offered into evidence were inadvertently sent to the jury room

---

**2.** Small also argues that there was insufficient evidence to prove the existence of the single conspiracy alleged in the indictment. He asserts that the entry of the LCN into the P2P importation operation broke up whatever conspiracy existed into separate and distinct conspiracies. We reject this argument for the reasons set forth in *United States v. Kelly*, 892 F.2d 255, 258 (3d Cir.1989), the companion case to this appeal.

**3.** The sidebar conference contained the following statement by Small's attorney:

The problem is broader than Robert Small. The testimony about the other family members cutting foils, it's imprecise as to time, it's imprecise as to what the foils were used for. There is no tie-in between that and this conspiracy that's on trial in this courtroom. As I've previously told you, my client and his family members, his wife and daughter, are under indictment for a distinct conspiracy over in New Jersey.

during deliberations. In holding that the plain error standard was applicable, we stated that "[i]t is ordinarily the responsibility of counsel to check the exhibits and failure to object in a timely manner can under some circumstances constitute a waiver." 685 F.2d at 864 (citations omitted). Similarly, in *United States v. Friedland*, 660 F.2d 919, 928 (3d Cir.1981), *cert. denied*, 456 U.S. 989, 102 S.Ct. 2268, 73 L.Ed.2d 1283 (1982), we stated that "[i]f the exhibits were not intended by the court or the parties to remain in evidence, or were not actually admitted into evidence, appellants cannot now object to their presence in the jury room unless they can show that the court committed 'plain error.'" Here, Mr. Shapiro stated that he had Mr. Meyerson's "proxy" to decide these matters during Mr. Meyerson's absence from the courtroom. For Small to now argue that Mr. Shapiro had "proxy" over some matters and not others is an exercise in speculation. In a case such as here where defense counsel had the opportunity to examine the testimony, "the defendant should not be allowed to speculate by letting error go unremarked while then seeking a new trial on the basis of an unfavorable verdict." *Friedland*, 660 F.2d at 928 n. 9 (*citing* 3 Wright, *Federal Practice and Procedure* (Criminal) § 842 at 342 (1969)).[4]

Since we conclude that Small did not preserve this issue at trial, we review pursuant to a plain error standard. Rule 52(b) authorizes Courts of Appeals to correct only "particularly egregious errors" which "seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (citations omitted).

### B.

■ Small argues that we should essentially disregard the results of the voir dire conducted by the district court and hold that the fact that a highly prejudicial sidebar conference was mistakenly shown to the jury is in itself reversible error. He argues for a standard in which the jury is not questioned at all "if it is undisputed, as in this case, that inadmissible evidence went out to the jury." Brief for Small at 21. While we do not dispute Small's assertion that the sidebar discussion concerning pending charges against him and members of his family is prejudicial, a district judge is not precluded from discovering whether the jurors actually saw the prejudicial material. Fed.R.Evid. 606(b) allows jurors to testify as to "whether extraneous prejudicial information was improperly brought to the jury's attention.", although no inquiry is permitted into the juror's mental processes in reaching the verdict. This court has stated that individual voir dire is the preferred method to determine "what extra-record information was conveyed [to the jury] and the manner of its conveyance." *Government of Virgin Islands v. Dowling*, 814 F.2d 134, 139–40 (3d Cir. 1987). Here, the court limited its inquiry to whether the jurors had read the sidebar conference and whether they had discussed it. The court was careful, when questioning Juror 11, the only one who stated that he had read the sidebar, to avoid any inquiry into the effect that the sidebar had on the jury's deliberations. The court acted properly in seeking to determine the level of the jury's exposure to the prejudicial material.

■ Small next argues that the district court erred in disregarding the voir dire testimony of Juror Number 11. He claims that it was improper for the judge to draw an inference that the juror was confused with the question or that he was being less than candid in his answers without further questioning. Our review of Juror Number 11's voir dire testimony clearly establishes that this does not rise to the level of plain error. Indeed, we find no error. The dis-

---

**4.** In urging us not to apply the plain error standard, Small argues that the government was equally at fault in not examining Mita's testimony before it went out with the jury. While this issue is relevant in determining whether in fact plain error was committed, it does not have any relevance to the standard which we apply to this case. *See Joseph*, 685 F.2d at 864 (court found plain error in case where both parties were negligent in failing to examine exhibits which went to the jury).

trict court carefully evaluated Juror 11's testimony in light of the unequivocal answers from the other jurors that the sidebar conference was neither read or discussed.[5] Even if we were to hold that the district court's refusal to expand the voir dire was error, it was certainly not an error which affected "the fairness, integrity or public reputation" of the trial. *Young, supra.*

Accordingly, we will affirm the judgment of the district court.

---

**5.** As *Dowling* teaches, the trial court is in a far better position to assess the credibility of the juror during voir dire, especially in this case where the trial lasted for over a month. 814 F.2d at 137. Small cannot show that the district court even abused its discretion. He falls far short of showing that the refusal of the district court to grant a mistrial was plain error.