

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-17-2009

# USA v. Berryman

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1948

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"USA v. Berryman" (2009). *2009 Decisions*. Paper 1521.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1521

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 08-1948
_____

UNITED STATES OF AMERICA

v.

FRANK BERRYMAN,

Appellant


On Appeal From the United States District Court
for the Eastern District of Pennsylvania
(04-425-01)
District Judge:  Honorable Petrese B. Tucker


Submitted Under Third Circuit LAR 34.1(a)
March 12, 2009

Before: FUENTES, CHAGARES, and TASHIMA,[*] Circuit Judges

(Filed April 17, 2009)
_____

OPINION OF THE COURT
_____


CHAGARES, Circuit Judge.

---

[*] Honorable A. Wallace Tashima, Senior United States Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Frank Berryman appeals from the District Court's judgment of conviction and sentence. We will affirm.

I.

On March 9, 2004, at about 6:00 p.m., three men robbed John Coscia's gun store in Palmer Township, Pennsylvania (about 70 miles north of Philadelphia). One of those men pulled a gun on Coscia, pistol-whipped him, and sat on him while the two accomplices looted the store. The next day, March 10, 2004, Palmer Township police asked Coscia to identify the robber who assaulted him from an array of six photos of men other than Berryman. Coscia did not make an identification.

On March 24, 2004, Philadelphia police stopped a car with a broken headlight. As an officer approached the car, he noticed a gun next to the driver. He removed the driver from the car and handcuffed him. All the while, the passenger, Berryman, was fidgeting in his seat. He told officers that the permit for the gun was in the center console. Police opened the compartment and found not paperwork but rather marijuana and crack cocaine. They also saw a gun underneath the passenger seat.

The officers removed Berryman from the vehicle. When one officer, who had his eyes on Berryman, turned away to talk to his partner, Berryman fled. Police chased Berryman for three blocks before ultimately apprehending him and arresting him on state gun- and drug-possession charges. After police identified the gun under the passenger seat as one of the weapons stolen during the March 9, 2004 robbery, the Commonwealth added a receipt-of-stolen-property charge.

2

On or about April 7, 2004, police showed Coscia another photo array, this one containing Berryman's photo and five others. Coscia picked Berryman as the man who assaulted him during the robbery.

On April 12, 2004, Palmer Township Police Detective Daniel Monek visited Berryman in state prison in order to discuss the robbery. Berryman waived his rights under Miranda v. Arizona, 384 U.S. 436 (1966), and Monek began the interrogation. Berryman denied having possessed the stolen gun and denied having taken part in the robbery. Monek told him that the robbery happened on March 9, 2004, and Berryman said he could not have committed the robbery that day because he was under house arrest and had not left the house. Electronic monitoring records revealed this to be incorrect: while Berryman was indeed on house arrest that day, he was out of the house for several hours.

On June 30, 2004, the Commonwealth dismissed the state charges. On July 15, 2004, Bureau of Alcohol, Tobacco, and Firearms special agents arrested Berryman on a criminal complaint for robbery and various gun-possession offenses. Berryman was given the Miranda warnings and waived his rights. Special Agent Timothy Shelton then interrogated him about the robbery. As he did when speaking with Monek, Berryman gave his false house-arrest alibi.

Later in July 2004, Berryman became cellmates with Christopher Plytas. One day, Berryman confessed to Plytas that he played a key role in the robbery of Coscia's gun store.

3

On July 21, 2004, the Government obtained an indictment, and on December 21, 2004, it obtained a superseding indictment charging one count of conspiracy to interfere with commerce by robbery in violation of 18 U.S.C. § 1951(a), one count of interference with commerce by robbery in violation of § 1951(a), one count of using and carrying a firearm during a crime of violence in violation of § 924(c)(1)(A)(ii), two counts of possession of a stolen firearm in violation of § 922(j), one count of possession of cocaine base in violation of 21 U.S.C. § 844(a), and two counts of being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).

The case proceeded to trial. The District Court dismissed the drug count, and the jury ultimately convicted Berryman of each of the remaining counts. The District Court then imposed a sentence of 210 months of imprisonment on the robbery and gun-possession offenses, and a consecutive sentence of 84 months of imprisonment on the § 924(c)(1)(A)(ii) offense, for a total of 294 months of imprisonment.

Berryman then filed this appeal raising numerous evidentiary and constitutional challenges to the District Court's judgment of conviction and sentence. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and this Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II.

### A.

Berryman argues that the District Court's admission of his prior statements revealing he was on house arrest at the time of the robbery, and computerized monitoring

4

records relating to that house arrest, violated Federal Rule of Evidence 404(b). Berryman

raised this issue for the first time in a post-verdict motion,[1] and the District Court rejected

it. We review the District Court's ruling for plain error. United States v. Small, 891 F.2d

53, 55-56 (3d Cir. 1989) (applying plain-error review to claim of trial error raised first in

timely post-verdict motion).

Rule 404(b) provides that extrinsic evidence of "other crimes, wrongs, or acts"

may not be offered to prove the defendant's criminal propensity. But, such evidence may

be admitted if (1) it has a proper purpose, (2) it is relevant, (3) its probative value

outweighs its potential for unfair prejudicial effect, and (4) the court instructs the jury to

consider it only for its limited, proper purpose. United States v. Vega, 285 F.3d 256, 261

(3d Cir. 2002).

Berryman's claim is meritless. The portions of the statements that reference house

arrest, combined with the computerized records, demonstrate Berryman's opportunity to

commit the crime and his consciousness of guilt in lying about it. The Government

attempted to show that Berryman gave a false alibi. That is, Berryman claimed to have

been at home, on house arrest during the time of the robbery. The records showed

otherwise. For that reason, the evidence was relevant. To be sure, this evidence is

prejudicial. But that prejudice is outweighed by its probative value. Berryman's

---

[1] In a motion in limine, Berryman made what appear to be objections based upon Rules 402 and 403, see Supplemental Appendix (Supp. App.) 561, but he made no objection based upon Rule 404(b). At trial, he reiterated the Rule 403 objection, see Supp. App. 105, but again failed to implicate Rule 404(b).

statements, and the associated computer records directly contradicting them, disprove Berryman's alibi much more forcefully than, for example, would his proposed method of dealing with this evidence: introducing the testimony of a purported eyewitness who stated that he observed Berryman outside of the home at the time Berryman claimed to have been inside. See Supp. App. 117.

And as to the required jury instruction, defense counsel asked the District Court to refrain from giving a cautionary instruction until the defense requested one. The defense did not request one at the time the evidence was introduced. The District Court did provide such an instruction at the end of the trial. It told the jury: "You are not to speculate as to the reason for [the house arrest] and you are not to draw any inference from it. You may not consider it as a factor in your deliberations as to whether or not the defendant is guilty or not guilty." Supp. App. 495. At the defense's request, the District Court amplified this instruction, stating:

> You heard during the course of this trial that the defendant Frank Berryman was on house arrest during the month of March, 2004. You are not to speculate as to the underlying reason for him being on house arrest. You cannot draw any, you are not to draw any inference as to the underlying case. However, you may consider the monitoring records and procedures, evidence that was offered to you in this case and give it whatever weight you may think it deserves.

Appendix (App.) 132-33. The defense did not object.

Even if this instruction was not ideal, it did "inform the jurors of the limited use they may make" of the house-arrest evidence. United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999). Further, it instructed them "not to draw any inference of bad

6

character from [the evidence]." Id. Indeed, the first instruction went further than merely telling the jurors not to consider it in evaluating Berryman's character. That instruction told them not to "consider it as a factor in [their] deliberations as to whether or not the defendant is guilty or not guilty." Supp. App. 495. In any event, it cannot be said that the District Court's instructions "'seriously affect[ed] the fairness, integrity or public reputation of [the] judicial proceedings,'" United States v. Young, 470 U.S. 1, 15 (1985) (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)), or caused a "'miscarriage of justice,'" id. (quoting United States v. Frady, 456 U.S. 152, 163 n.14 (1982)).

Accordingly, the District Court's admission of evidence mentioning Berryman's house arrest was not plainly erroneous.

B.

Berryman argues that admission of Coscia's identification of Berryman from the April 7, 2004 photo array was improper. Berryman raised this claim first at trial and again in a post-verdict motion. The District Court rejected it. We engage in plenary review of the District Court's conclusions of law and clearly erroneous review of its conclusions of fact. United States v. Perez, 280 F.3d 318, 336 (3d Cir. 2002).

Berryman contends that the admission was improper because the April 7, 2004 array contained (1) a photo of Berryman taken when he was 18 years old, though he was 24 years old at the time of the robbery, (2) three of the same photos that Coscia saw in the March 10, 2004 array, and (3) one photo of a man who appeared to be substantially older than the men in the five other photos. This claim is without merit.

7

Eyewitness testimony will be permitted unless the pre-trial identification procedure was so unnecessarily suggestive as to give rise to such a substantial likelihood of misidentification that admitting the identification testimony would be a denial of due process. United States v. Emanuele, 51 F.3d 1123, 1128 (3d Cir. 1995). "A suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability . . . ." Id. (quoting Manson v. Brathwaite, 432 U.S. 98, 116 (1977)) (internal quotation marks omitted). To determine reliability, we examine the totality of the circumstances, including "the witness' [sic] original opportunity to observe [the] defendant and the degree of attention during that observation; the accuracy of the initial description; the witness' [sic] degree of certainty when viewing [the] defendant or his imagine; and the length of time between the crime and the identification procedure." Id. (quoting Neil v. Biggers, 409 U.S. 188, 199-200 (1972)) (internal quotation marks omitted).

Here, even if the contents of the second array were suggestive and unnecessary, admission of the identification was proper because the identification was reliable under the circumstances. Coscia had an adequate opportunity to view Berryman and devoted considerable attention to him while doing so. Before Berryman pulled a gun on Coscia, Berryman feigned an attempt to conduct a face-to-face business transaction with him in good lighting. See Supp. App. 152-55. When he was shown the second array, he identified Berryman without hesitation. See Supp. App. 82-83. And the second array was presented less than a month after the robbery. See Biggers, 409 U.S. at 201 (holding

8

identification occurring seven months after crime was reliable). These factors strongly suggest that the identification based on the second array was reliable. Admitting that identification, then, was proper.[2]

### C.

Berryman argues that the Government violated his Sixth Amendment right to counsel by "deputizing" Plytas as a federal agent, failing to advise Berryman of his right to counsel, and failing to obtain a waiver of that right before Berryman admitted to Plytas that he played a key role in the robbery of Coscia's gun store. Berryman argues, then, that Plytas's testimony to this effect should be suppressed. Berryman moved before trial to suppress Plytas's testimony, but he did not make the Sixth Amendment argument he makes on appeal until after trial, in his post-verdict motion. Therefore, these Sixth Amendment arguments are waived. See United States v. Rose, 538 F.3d 175, 177 (3d Cir. 2008) (interpreting Federal Rule of Criminal Procedure 12(b)(3)).

Berryman makes two counterarguments. First, he claims that, because the Government had not provided all of the information it had in its possession about Plytas until just before trial was set to begin, Berryman should be excused from failing to raise this ground for suppression before trial. This argument fails, however, because defense counsel requested and received a continuance in light of these disclosures, yet still did not

---

[2] Though we reach this conclusion based upon reliability analysis, we agree with the District Court that the evidence related to the photo-array identification "was not defective" in the first place. App. 164.

raise its Sixth Amendment argument before trial (or at the very least, seek another such continuance). See Supp. App. 17-18. Further, in his appellate brief, the bulk of Berryman's record citations to trial testimony concerning Plytas's prior dealings with the Government stem from information which was disclosed well in advance of trial. See, e.g., Appellant's Br. at 37; Supp. App. 14-18.

Second, Berryman argues that, in any event, Rose speaks only to the application of Rule 12 when a defendant makes a suppression argument for the first time on appeal, and Berryman made his Sixth Amendment argument for the first time in a timely post-verdict motion. This again has no merit, as Rule 12 in its terms requires that suppression arguments must be raised "before trial." Fed. R. Crim. P. 12(b)(3)(C), (e); cf. Fed. R. Crim. P. 12(b)(3)(B) (providing that motion alleging defect in indictment or information may be filed "at any time while the case is pending").


D.

Berryman argues that the Government violated its obligation under Brady v. Maryland, 373 U.S. 83 (1963), to disclose any information in its possession that was favorable to Berryman's case and material to the case's outcome. Berryman made a Brady request before trial and in a post-verdict motion. The District Court ruled that the Government did not violate Brady. We exercise plenary review of the District Court's conclusions of law and clearly erroneous review of its conclusions of fact. United States v. Pelullo, 14 F.3d 881, 886 (3d Cir. 1994).

10

The prosecution violates Brady where it suppresses evidence that is favorable to the defendant and material to the outcome of the case. Evidence is deemed "suppressed" if the prosecution actually knows about it but does not disclose it, but evidence is also deemed "suppressed" if the prosecution constructively knows about it – for example, if a member of the wider "prosecution team," including non-lawyer investigators, knows about it – but does not disclose it. See United States v. Reyeros, 537 F.3d 270, 281 (3d Cir. 2008). Evidence is "material" when there is a reasonable probability that, if it had been disclosed before trial, the defendant would have been acquitted. Kyles v. Whitley, 514 U.S. 419, 432-42 (1995). Therefore, by definition, evidence that is merely cumulative of evidence that was disclosed cannot be material because defense counsel already had it (or had access to it). See United States v. Boone, 279 F.3d 163, 191 (3d Cir. 2002); United States v. Hill, 976 F.2d 132, 138 (3d Cir. 1992). A "reasonable probability" does not require a greater-than-fifty-percent chance, but it does require more than mere speculation. Kyles, 514 U.S. at 437-38. Put another way, the reviewing court must determine "whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Strickler v. Greene, 527 U.S. 263, 290 (1999).

Berryman argues that the Government violated Brady by failing to disclose that three of the six photos in the array presented to Coscia on April 9, 2004 had been used in the array presented to him several weeks before. This claim is meritless. Berryman had in his possession actual copies of each photo array in question. Simply comparing those

11

arrays would have yielded the information Berryman claims the Government should have provided directly. Compare App. 200 with App. 201. Indeed, the defense made this very comparison in its closing argument. See Supp. App. 444-46. Disclosure, then, would not have added anything new, and therefore would not have increased the chances that a different verdict (namely, an acquittal) would have been returned. See Boone, 279 F.3d at 191; Hill, 976 F.2d at 138.

Berryman next argues that the Government violated Brady by failing to disclose Monek's rough notes of his interview with Berryman. He argues that the notes may undercut the inculpatory value of the statements he gave to Monek and Shelton. Namely, he posits that the notes may reveal that Monek told Berryman the robbery occurred on a weekend, which would make Berryman's statement (to Monek and later to Shelton) that he was home on house arrest during the time of the robbery truthful, and not a "false alibi" as the Government contended. This Brady claim, too, is without merit. The Government represented, and the District Court accepted, that Monek never took any notes in the first place. Further, Berryman offers nothing more than mere speculation that the notes (if they did exist) would reveal Monek said that the robbery occurred on the weekend. The available evidence indeed suggests otherwise. Monek testified that he told Berryman that the robbery occurred on March 9, 2004 (a Tuesday). Supp. App. 85. Defense counsel, on cross-examination, asked Monek whether he told Berryman what day of the week March 9, 2004 was, and Monek testified that he did not believe so. Supp. App. 92. Defense counsel then moved to another line of questioning. Supp. App. 92-93.

12

Accordingly, this <u>Brady</u> claim fails.  <u>See</u> <u>United States v. Ramos</u>, 27 F.3d 65, 71 (3d Cir. 1994) (holding that "mere speculation" that unproduced rough notes contain information discoverable under <u>Brady</u>, taken together with Government's representation to the contrary and other evidence tending to suggest that notes would not be material, cannot form the basis for a <u>Brady</u> violation).

E.

Berryman argues that Monek and Shelton violated his Sixth Amendment right to counsel by interrogating him without counsel present.  He made this claim in a pre-trial motion, and the District Court rejected it.  We engage in plenary review of the District Court's conclusions of law and clearly erroneous review of its conclusions of fact.  <u>Perez</u>, 280 F.3d at 336.

A defendant's Sixth Amendment right to counsel attaches to a certain charge when the prosecution of that charge commences.  <u>Brewer v. Williams</u>, 430 U.S. 387, 398 (1977).  If the suspect is not represented by counsel on that charge and has not yet invoked the right (for example, by asking for a lawyer), he may waive the right and submit to police questioning.  <u>Patterson v. Illinois</u>, 487 U.S. 285, 291 (1988).  When Monek interviewed Berryman on April 12, 2004, about the robbery, no criminal proceedings involving Berryman had begun with respect to that charge.  Thus, Berryman's Sixth Amendment right to counsel had not yet attached to the federal robbery

charge.[3]  Therefore, the right could not have been violated; Monek's interrogation was constitutionally proper.

Berryman's right to counsel did not attach to the federal robbery charge until after Shelton's July 15, 2004 interrogation, when Berryman made his initial appearance in federal court.  See United States v. Muzychka, 725 F.2d 1061, 1064-65, 1068 (3d Cir. 1984) (holding that, where preliminary hearing or arraignment has not yet occurred, arrest alone does not trigger Sixth Amendment right to counsel); Supp. App. 247 (indicating that interrogation was contemporaneous with arrest and therefore prior to preliminary hearing held later that day).  Therefore, anything that occurred during that interrogation could not have violated Berryman's Sixth Amendment right to counsel.  Shelton's

---

[3] Berryman argues that the right to counsel attached to the federal robbery charge on March 24, 2004, the day he was arrested on the state gun- and drug-possession charges, because those charges are "indistinguishable" from the federal robbery charge. Appellant's Br. at 51.  Berryman is mistaken.

True, when the right to counsel attached to the state gun- and drug-possession charges, it also attached to all charges that are "the same" as any of those charges, within the meaning of Blockburger v. United States, 232 U.S. 299 (1932).  See Texas v. Cobb, 532 U.S. 162, 172-73 (2001).  Two charges are "the same" if the they each punish "the same act or transaction" and if all of the elements of one are also elements of the other. Blockburger, 232 U.S. at 304.  The federal robbery charge, however, is not "the same" as any of the state gun- and drug-possession charges.  The robbery statute, 18 U.S.C. § 1951(a), requires an interstate-commerce nexus; the Pennsylvania statutes Berry was charged with violating do not.  See United States v. Betancourt, 116 F.3d 74, 75 (3d Cir. 1997) (holding that interstate-commerce connection is valid element for comparison under the Blockburger test).  The Pennsylvania statutes each require possession of certain property (guns or drugs); the robbery statute does not, see § 1951(a) (providing that an attempt to rob, which does not entail successfully obtaining any items of value, violates the statute).

14

interrogation, then, like Monek's, was constitutionally adequate.[4]

F.

Berryman argues that he should not have been adjudged guilty of the violation of 18 U.S.C. § 922(g)(1) charged in count eight of the superseding indictment, because this charge was submitted to the jury as "count seven" after the District Court renumbered that count (and also renumbered the superseding indictment's "count seven" to "count six") after it dismissed the superseding indictment's "count six." Berryman did not object when the District Court renumbered the counts before giving the case to the jury, see Supp. App. 541, 547, he did not object when the prosecutor referred to the renumbered counts using their new numbers, see Supp. App. 543, 545, and he did not object when the jury returned its verdict of guilty on those renumbered counts, see Supp. App. 556-57. Rather, he made this argument for the first time in a post-verdict motion. The District Court rejected it. We review the District Court's ruling, then, for plain error. Small, 891 F.2d at 55-56 (3d Cir. 1989).

Berryman's position has no merit. He does not argue that, apart from the renumbering, the counts on which he was sentenced were different from those on which he was convicted. That is the end of the matter. See United States v. Ellison, 557 F.2d

_____

[4] Even if the right had attached prior to Shelton's interrogation, there was no Sixth Amendment violation. When Shelton interrogated Berryman concerning the robbery, Berryman was not represented by counsel on that charge. He did not invoke his Sixth Amendment right. Rather, he waived the right, and he does not argue here that his waiver was anything other than knowing and voluntary.

15

128, 135-36 (7th Cir. 1977) (holding that any error resulting from renumbering counts of indictment before giving case to jury is harmless – and thus, a fortiori, not plain – where "apart from the different renumbering, the counts on which the jury convicted [the defendant] were identical to the counts under which he was sentenced").

G.

Berryman argues that his convictions on counts four and five, for violations of 18 U.S.C. § 922(g)(1), and counts seven and eight, for violations of § 922(j), should be set aside because those statutes are unconstitutional. Berryman did not make this claim in any pre-trial motion or during trial. He advanced it for the first time in a post-verdict motion. The District Court rejected it. We review that ruling for plain error. Small, 891 F.2d at 55-56.

Berryman claims that § 922(g)(1) and (j) exceed Congress's Commerce Clause power because they criminalize possession of "an object which may or may not have traveled at some time in interstate commerce . . . ." Appellant's Br. at 53. Berryman's characterization of these provisions is incorrect; each by its terms requires a definite interstate-commerce nexus. We have held that § 922(g)(1), so construed, is constitutional. United States v. Singletary, 268 F.3d 196, 205 (3d Cir. 2001). Subsection (j) incorporates materially identical interstate-commerce language, so it too passes Commerce Clause muster.

H.

Finally, Berryman argues that the evidence adduced at trial was insufficient to

16

support his convictions. He notes, however, that this claim does not stand alone. Rather, it "is really cumulative of the other issues presented . . . ." Appellant's Br. at 13. Accordingly, he puts forth no independent argument in support of his insufficiency claim. He states only that the evidence was insufficient "[i]n light of the evidentiary problems and missing Brady material . . . ." Appellant's Br. at 13. Because we rejected his arguments concerning all of the "other issues presented," then, we reject this challenge to the sufficiency of the trial evidence.[5]

III.

Berryman argues that his sentence was unreasonable because the District Court incorrectly calculated his United States Sentencing Guidelines criminal history score. He also argues that the sentence was unreasonable because the District Court – and not the jury – found facts that increased Berryman's maximum sentence. We review the District Court's sentence for reasonableness, evaluating both its procedural and substantive underpinnings using a deferential abuse-of-discretion standard. Gall v. United States, 128 S. Ct. 586, 594 (2007).

Berryman first argues that the District Court should have added only one point based upon his prior conviction, not three, and therefore should have computed his total

---

[5] We note that, were he actually to pursue a freestanding insufficiency claim, we would "view the evidence in the light most favorable to the Government, and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime[s] beyond a reasonable doubt." United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998) (quoting United States v. Voigt, 89 F.3d 1050, 1080 (3d Cir. 1996)) (internal quotation marks omitted). We then would reject the claim.

criminal history score as 12, not 14. This claim is meritless. Berryman was a career offender and has not challenged that designation. Therefore, his criminal history category is VI regardless of his score. See United States Sentencing Guidlines § 4B1.1(b) ("A career offender's criminal history category in every case under this subsection shall be Category VI.").

He next argues that the facts supporting the brandishing-a-weapon component of his § 924(c)(1)(A)(ii) offense were improperly found by the District Court and had to be found by the jury. This claim, too, is meritless. The Supreme Court has squarely held that, with respect to § 924(c)(1)(A)(ii), "[t]he statute regards brandishing . . . as [a] sentencing factor[] to be found by the judge, not [an] offense element[] to be found by the jury." Harris v. United States, 536 U.S. 545, 556 (2002).

## IV.

For the above reasons, we will affirm the District Court's judgment of conviction and sentence.